(PRIZE.)

*The Hiram.*—CORNTHWAIT ET AL. *Claimants.*

An agreement in a court of common law, chancery, or prize made under a clear mistake, will be set aside.

Navigating under a license from the enemy is cause of confiscation, and is closely connected in principle with the offence of trading with the enemy; in both cases, the knowledge of the agent will affect the principal, although he may, in reality, be ignorant of the fact.

APPEAL from the circuit court for the district of Massachusetts. This was a vessel laden with flour, and bound from Baltimore to Lisbon, captured, and finally condemned by this court at February term, 1814, for sailing under a license from the enemy. The present case was that of the claimants of a greater part of the cargo. The ship was owned,

and the license procured, by Samuel G. Griffith, a citizen of the United States. Separate bills of lading were at first signed by the master, one for each shipper, and separate letters of instruction were given to Patterson Hartshorne, the supercargo  But, in the expectation, as was alleged, that in case of detention the delay and expense would be less considerable if the cargo appeared to be the property of one individual, than if there should be several small claims, one general bill of lading was signed to the owner of the ship, and one general letter of instruction was given in his name to the supercargo, so as to make the whole cargo appear to be owned by Mr. Griffith, the owner of the ship, and of a small part of the cargo. At the May term, 1814, of the circuit court, the property of the claimants was condemned by that court upon the ground that their counsel had, at the preceding term, entered into an agreement with the captors that the decision of the supreme court, as to Griffith's claim, should conclude the rest. Of this agreement the circuit judge had made a memorandum in his minute book, but it was not entered on the records of the court until the May term, at which condemnation was pronounced, when it was admitted by the claimants' counsel to have been made, and was recorded. From this last sentence of condemnation, an appeal was taken to this court.

*Pinkney*, for the appellants and claimants. 1. The claimants of the cargo cannot be concluded by the verbal agreement in the court below, so as to exclude them from farther proof. The agreement was,

that the decision of this court, as to the ship, should bind the fate of the cargo, and was entered into upon a mistaken supposition that the question was the same in both cases. The court of chancery will grant a rehearing though the parties have entered into an order by consent to abide the decree, and not to appeal.[a] If a court of equity will do it, why will not a court of prize, which is still more liberal in its practice, do the same thing? 2. Although farther proof was ordered by the court below, it did not apply to the claimants' case as distinguishable from that of the ship owner, and they may, and ought to, be let in to farther proof again.[b] 3. The principle on which a court of prize proceeds in confiscating the property of a citizen for the offence of sailing with a license from the enemy, has its root in the municipal code. It is but enforcing the rule of municipal law, as to allegiance, in a court of the law of nations. Therefore, the party cannot be liable to a penalty *civiliter* unless he would have been liable *criminaliter*: the presumption of law is, indeed, against the party, but it is a presumption which will bend to fact; and there must be an *actual* participation by knowing the fact, or a *virtual* participation in neglecting to make the proper inquiries. If the fact of trading with the enemy be a misdemeanor, the *scienter* must be laid in the indictment; and it must be. a misdemeanor, or a court of prize cannot

*a* 3 *Peere Will.* 242. Buck v. Turcott. 1 *Vern.* 274. *Vide* 2 *Ves.* 458.

*b* 2 *Rob.* 322. The Harmony. 6 *Rob.* 132. The Frankum.

furnish it.   Resistance to the right of search by a
neutral, ignorant of the existence of war, does not
import confiscation.[c]   Why? Because there was no
intention to commit an offence.   Ignorance of one
part owner of a ship, where the owners are not ge-
neral partners, will exempt his share from the penal-
ty of confiscation for carrying contraband.[d]   Spolia-
tion of papers, by the master, does not preclude the
owners from farther proof, though it does preclude
him.[e]   The owner of the cargo is not held respon-
sible for the master's breach of blockade, unless the
blockade was known to exist before the voyage com
menced.[f]   There must be the intention as well as the
act of trading with the enemy to constitute guilt.   The
*continentiam delicti* is here wanting; the ship owner was
not the agent of the claimants for this purpose; and sup-
posing the supercargo to have been their agent, where
will be found the application of the maxim *respondeat
superior?* In the prize court, when acting in the sphere
of its proper jurisdiction of cases arising under the
*jus gentium :* but this is the case of the property of
a citizen taken in violation of his local allegiance.
The court must, therefore, adopt the maxim of do-
mestic jurisprudence, that guilt is never to be pre-
sumed, but always to be proved.

*Dexter*, for the respondents and captors, in reply.
The agreement in the court below, that the case of

1816.

The
Hiram.

c  5 *Rob.* 33. The St. Juan Baptista.
d  1 *Rob.* 330. The Jonge Tobias.
e  2 *Rob.* 108.
f  5 *Rob.* 262. The Adonis.   *Ib.* 267. The Shepherdess.

the present claimants should abide that of the ship owner in this court was acknowledged by both parties, and recorded *nunc pro tunc*. It is impossible, under the circumstances of this case, that it should be a fact that the owners of the cargo did not know the existence of the license; and, therefore, it is impossible for them to prove their ignorance of it. The claimants are affected with knowledge, by the knowledge of their agents—the ship owner and the supercargo; but it is superfluous to discuss the question of law, the facts are so clear.

MARSHALL, Ch. J., delivered the opinion of the court.

When the claimants, in this case, applied to the circuit court to be let in to farther proof, for the purpose of showing their ignorance of the fact that the *Hiram* sailed under the protection of a British license, the judge of that court considered the agreement of the parties that these causes should depend on the fate of Griffith's claim, under which agreement the sentence, that would otherwise have been pronounced against them, was suspended until the decision of the supreme court on that claim should be made, as having the same validity as if that agreement had been entered, at the time, on the records of the court. In that opinion, there having been no doubt respecting the fact, this court concurs. But this court is also of opinion that if the agreement was made under a clear mistake, the claimants ought to be relieved from it, where it could be done without injury to the opposite party. If a judgment be confessed

under a clear mistake, a court of law will set that judgment aside, if application be made, and the mistake shown while the judgment is in its power. An agreement, made a rule of court, to confess a judgment cannot be stronger than a confession itself; and, of course, a party will not be compelled to execute such an agreement, but will be allowed to show cause against the rule in a case where it was plainly entered into under a mistake. If the judgment be no longer in the power of a court of law, relief may be obtained in chancery. Still more certainly will an agreement, entered into in a suit originally depending in a court of chancery, be relaxed, or set aside, if it be proved to the court to have been entered into under a mistake. The case cited from *Peere Williams* is directly in point.

These principles are of universal justice, and of universal obligation. They cannot apply with less force to causes depending in prize courts than to causes depending in other courts. The propriety, then, of rejecting further proof in this case, and of condemning the property claimed by the appellants, will    pend on the clearness with which they show the mistake under which the agreement was made, and on their ability to support their case if that agreement be set aside. If a real and substantial difference exists between the case of the present claimants, and that formerly decided by this court, there will not be much difficulty in yielding to the suggestion, supported, as it is, by the proof now offered, that this agreement was made without knowledge of that difference, and, consequently, by mis-

take. But the question then occurs, whether res-
titution ought to be decreed to them, if the obliga-
tion of the agreement be removed.

The claimants allege that, in point of fact, they
did not know that the Hiram sailed under a British
license, and the proof they offer goes far in sup-
porting this allegation. It is admitted that igno-
rance of this fact will save from the forfeiture incur-
red by it, unless the claimants have such construc-
tive notice as will preclude them from showing the
want of actual notice. It has been argued that the
transaction rendered Griffith the agent of the other
shippers, so as to infect their claims with his know-
ledge; that by consenting that their property should
be shipped in his name, it becomes liable to all the
risks to which it would have been exposed had it
been actually his. It has been also argued that
the supercargo is clearly the agent of the shippers,
and that his knowledge of the license being on board
is, constructively, their knowledge. The counsel for
the claimants endeavours to rescue his clients from
the effect of this constructive notice, by contending
that the principle of *respondeat superior* can never ap-
ply to a case of a criminal nature; that a license
works a forfeiture, because it is a breach of alle-
giance—an offence which cannot be imputed to a
person having no knowledge of the criminal act
which constitutes the breach of allegiance: and that
this principle has, in prize courts, been applied to
cases punishable under the law of nations; not to
offences against the government of the captor and
captured.

The court considers the sailing, under an enemy's license, as closely connected, in principle, with the offence of trading with the enemy; in which case it is believed to be incontrovertible, that the knowledge of the agent would affect the principal, although he might, in reality, be ignorant of the fact.[g] Upon this ground, the sentence of the circuit court is affirmed with costs.

Sentence affirmed.

[g] Thus, where a shipment was made to the enemy, by the partners of a house of trade, resident in a neutral country, without the knowledge or consent of a co-partner resident in the belligerant state, his share was held liable to confiscation. 6 *Rob.* 129. The Franklin. And it appears, from that case, that even an inactive, or sleeping, partner, (as it is termed,) has been held, by the Lords of Appeal, incapable of receiving restitution in a transaction in which he could not lawfully be engaged, as a sole trader. *Ib.* 131.