**GAMEWELL MANUFACTURING, INC.,**
a corporation, Appellant,

v.

**HVAC SUPPLY, INC., and Aeronca, Inc., Appellees.**

No. 82–1533.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 11, 1983.

Decided Aug. 9, 1983.

Rehearing Denied Sept. 14, 1983.

C. Robert Wartell, Southfield, Mich. (J. Laevin Weiner, Weiner, Hauser, Wartell & Roth, Southfield, Mich., on brief), for appellant.

James D. Myers, Charlotte, N.C. (Charles P. Elderkin, John J. Barnhardt, III, Bell, Seltzer, Park & Gibson, Charlotte, N.C., on brief), for appellees.

Before PHILLIPS and CHAPMAN, Circuit Judges, and FIELD, Senior Circuit Judge.

JAMES DICKSON PHILLIPS, Circuit Judge:

After filing suit against HVAC Supply, Inc., and Aeronca, Inc., for patent infringement, Gamewell Manufacturing, Inc.

(Gamewell), entered into a settlement agreement with the defendants which it now seeks to avoid on the basis of unilateral mistake. The district court, applying state law, held that unilateral mistake was not a basis for rescission of the agreement and entered an order enforcing the settlement as stipulated by the parties. Because we find that the district court erred by not applying federal law, which recognizes unilateral mistake as a grounds for rescission in limited circumstances, we reverse and remand for further proceedings.

## I

Gamewell holds a patent on an air-handling unit used in the filtration of foreign particles from the air in industrial facilities. It filed suit against HVAC Supply and Aeronca for infringement of that patent, seeking injunctive relief and money damages. During discovery, Gamewell apparently became concerned whether its patent would withstand challenge during the infringement suit, and had an independent-testing laboratory conduct tests in February 1982 comparing its patented product with the pre-patent technology. The test results, which showed little difference between the pre-patent and patented filter systems, evidently were sufficiently discouraging that Gamewell opted to pursue settlement of the lawsuit.[1]

The case was docketed for non-jury trial the week of February 15, 1982. On February 14, Gamewell's counsel indicated to counsel for defendants that Gamewell was willing to accept a settlement offer proposed by defendants on February 12. After preparing a written agreement for formal execution, the parties informed the district court, on the morning of February 16, that they had reached a settlement.

On that same day, however, Gamewell discovered errors in the testing that had precipitated the settlement agreement. In providing the testing laboratory with the samples upon which the comparative tests were to be run, Gamewell had mistakenly supplied two samples of its own patented technology—rather than one pre-patent system and one of its patented air-handling mechanisms. Thus, the test results that impelled Gamewell to seek settlement were essentially meaningless. Upon discovery of the error, Gamewell reran the tests with the proper samples; the new results indicated a substantial difference (and improvement) between the patented and pre-patent technology. Gamewell then informed defendants, on Thursday, February 18, that it would not proceed with settlement, and sought by telephone to have the case reinstated on the district court docket.

That same day, defendants filed with the district court a motion for judgment on the settlement agreement. Finding, after a hearing, that the settlement agreement was a binding contract, the court granted the motion and ordered the parties to perform their respective obligations. The court rejected Gamewell's attempt to rescind the settlement agreement due to the alleged mistake in testing, holding, under principles of North Carolina law which it found controlling, that unilateral mistake is not a basis for avoiding a contractual agreement. Gamewell appeals from the district court order entering judgment on the settlement agreement.[2]

## II

The preliminary question on this appeal—a vexed one upon which a welter of cases have reached divergent if not flatly inconsistent results [3]—is whether state law

---

1. There are no specific district court findings on the factual underpinnings of the parties' decisions to enter into the settlement agreement at issue, and these facts remain open on the remand we order.

2. Under 28 U.S.C. § 1295(a), the United States Court of Appeals for the Federal Circuit now has exclusive jurisdiction over patent appeals such as the instant one. Under the Federal

Courts Improvement Act of 1982 § 403(e), 28 U.S.C.A. § 171 comment (West Supp.1983), however, we have jurisdiction to decide the instant appeal, as one filed prior to October 1, 1982.

3. Compare, e.g., Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885, 888–93 (3d Cir. 1975), with Twentieth Century-Fox Film Corp. v. Winchester Drive-In Theatre, Inc., 351 F.2d

should be adopted as the federal rule of decision to govern the enforceability of settlement agreements such as that here in issue.[4] The specific choice-of-law problem does not appear to have been directly addressed in this circuit—though implicit choices may be found—so that we address it here as essentially a question of first impression.

■ In deciding open questions incident to the adjudication of federal statutory claims federal courts are competent, absent an explicit congressional directive, to formulate a federal rule of decision that either incorporates "borrowed" state law or that represents an independently derived federal rule.[5] *See United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 726–27, 99 S.Ct. 1448, 1457–58, 59 L.Ed.2d 711 (1979); *United States v. Little Lake Misere Land Co.,* 412 U.S. 580, 592–95, 93 S.Ct. 2389, 2396–98, 37 L.Ed.2d 187 (1973); Mishkin, *The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision,* 105 U.Pa.L.Rev. 797, 799–803 (1957). With competence to make such a choice accepted, inquiry turns to the principles properly governing choice in the instant case.

In a variety of situations federal courts have frequently declined to borrow state law to determine the enforceability of releases of federal causes of action, opting instead for application of a uniform federal rule. *See, e.g., Parker v. DeKalb Chrysler Plymouth,* 673 F.2d 1178, 1180 (11th Cir. 1982); *Fulgence v. J. Ray McDermott & Co.,* 662 F.2d 1207, 1208–09 (5th Cir.1981); *Jones v. Taber,* 648 F.2d 1201, 1203 (9th Cir.1981); *Ott v. Midland-Ross Corp.,* 523 F.2d 1367, 1368–69 (6th Cir.1975). Drawing on the rationale of *Dice v. Akron, Canton & Youngstown Railroad,* 342 U.S. 359, 361, 72 S.Ct. 312, 314, 96 L.Ed. 398 (1952), and *Garrett v. Moore-McCormack Co.,* 317 U.S. 239, 243–48, 63 S.Ct. 246, 249–52, 87 L.Ed. 239 (1942), these decisions have as their unifying thread a concern that federal remedial legislation, and individual rights thereunder, should not be subject to the vagaries of local law. But these cases also share a common feature that may not be shared as fully by the instant case. They involve federal statutory schemes—such as Title VII (*Fulgence*),[6] 42 U.S.C. § 1983 (*Jones*),[7] the Truth in Lending Act (*Par-*

---

925, 928 (9th Cir.1965), *cert. denied,* 382 U.S. 1011, 86 S.Ct. 620, 15 L.Ed.2d 526 (1966). *See generally* Note, *Displacement of State Rules of Decision in Construing Releases of Federal Claims,* 63 Cornell L.Rev. 339, 343–45 (1978).

**4.** To be distinguished from the question of whether state law, by incorporation, should govern the effect of a settlement agreement upon a party to that agreement is the separate question of the proper rule of decision governing the effect of that agreement upon persons not parties to the agreement. As to the latter question, the Supreme Court has established that a single federal standard will be applied to determine whether the release of a federal cause of action releases joint wrongdoers or co-conspirators not parties to the agreement. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 343–48, 91 S.Ct. 795, 808–11, 28 L.Ed.2d 77 (1971); *Aro Mfg. Co. v. Convertible Top Replacement Co.,* 377 U.S. 476, 501–02, 84 S.Ct. 1526, 1539–40, 12 L.Ed.2d 457 (1964). *See also Locafrance U.S. Corp. v. Intermodal Systems Leasing, Inc.,* 558 F.2d 1113, 1115–16 (2d Cir.1977). But these decisions leave open whether state law will be adopted to govern the enforceability of a release against a party to it. *See Three Rivers Motors Co. v. Ford Motor Co.,*

522 F.2d 885, 890–91 (3d Cir.1975); *Virginia Impression Products Co. v. SCM Corp.,* 448 F.2d 262, 269–70 (4th Cir.1971) (Winter, J., dissenting), *cert. denied,* 405 U.S. 936, 92 S.Ct. 945, 30 L.Ed.2d 811 (1972).

**5.** We do not think that *Erie* mandates application of state law *ex proprio vigore* in this context. *Cf. United States v. Yazell,* 382 U.S. 341, 357, 86 S.Ct. 500, 509, 16 L.Ed.2d 404 (1966) (in action to recover on contract, unnecessary to determine whether state law of coverture would be "adopted" as the federal rule or would apply of its own force).

**6.** *But see McArthur v. Southern Airways, Inc.,* 569 F.2d 276, 281 n. 10 (5th Cir.1978) (Rubin, J., dissenting); *Okonko v. Union Oil Co.,* 519 F.Supp. 372, 378 (C.D.Cal.1981).

**7.** *But cf. Fairfax Countywide Citizens Ass'n v. County of Fairfax,* 571 F.2d 1299, 1303 (4th Cir.), *cert. denied,* 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978), in which this court indicated that under the circumstances of that case state law would govern both the validity and the interpretation of a private agreement entered into in the course of § 1983 litigation

*ker*), the Age Discrimination in Employment Act (*Ott*), the Federal Employers' Liability Act (*Dice*), and the Jones Act (*Garrett*)—aimed at rectifying historical inequalities in bargaining power between parties. In these a uniform federal rule of decision to govern the release or settlement of the federal cause of action has been deemed essential.[8] *See Dice,* 342 U.S. at 361, 372 S.Ct. at 314.

This remedial-purpose rationale for applying a uniform federal common law standard, rather than borrowing state law as the rule of decision, might well be thought not applicable—at least with equal force—in federal patent infringement litigation. Though obviously imbued with a national interest, federal patent law simply does not reflect the special solicitude for unequally positioned claimants that is reflected in legislation such as the FELA and comparable "remedial" legislation. *Cf. Three Rivers Motors Co. v. Ford Motor Co.,* 522 F.2d 885, 890–92 (3d Cir.1975) (no need for uniform rule to govern the release of federal antitrust claims); *Virginia Impression Products Co. v. SCM Corp.,* 448 F.2d 262, 265–66 (4th Cir.1971) (applying state law of parties'

choice to construe the release of a federal antitrust claim), *cert. denied,* 405 U.S. 936, 92 S.Ct. 945, 30 L.Ed.2d 811 (1972).

But we can reserve the question whether the patent law may nonetheless be sufficiently "remedial" to justify, for that reason alone, application of a uniform federal rule of decision respecting settlement and release of claims. There exists another compelling reason for applying an independently derived federal rule in cases such as the instant one where the settlement occurs in pending litigation.

▮ Settlements and releases assertedly entered into in respect of federal litigation already in progress implicate federal procedural interests distinct from the underlying substantive interests of the parties. Once a claim—whatever its jurisdictional basis—is initiated in the federal courts, we believe that the standards by which that litigation may be settled, and hence resolved short of adjudication on the merits, are preeminently a matter for resolution by federal common law principles, independently derived.[9] *Cf. Hester v. New Amsterdam Casualty Co.,* 268 F.Supp. 623, 627 (D.S.C.1967) (compar-

---

subsequently dismissed on claimants' motion by a judgment that neither recited nor incorporated the settlement agreement. The court's statement was made in the course of dismissing for lack of federal subject matter jurisdiction claimants' motion under Fed.R.Civ.P. 60(b)(6) seeking *enforcement* of the settlement agreement according to its terms following its repudiation by defendants. In view of the narrow jurisdictional basis of the decision, the exact breadth of the choice-of-law rule announced in reaching it may be considered an open one.

In any event, for purposes of decision in this case, the critical point is that in *Fairfax County* the choice-of-law question was not presented either in the course of ongoing federal litigation or in connection with an effort to open a federal judgment entered on the basis of a settlement agreement. *See infra* note 9 and accompanying text. Rather, the *Fairfax County* court viewed the claimants' Rule 60(b)(6) motion as a jurisdictionally unsupported effort to assert an independent " 'cause of action' ... for breach of contract—a claim arising under state law." *Fairfax County,* 571 F.2d at 1303 n. 9.

8. Ample illustration is provided by the Ninth Circuit's decision in *Jones v. Taber,* 648 F.2d

1201, 1203–04 (9th Cir.1981): "[t]he federal solicitude for claimants under section 1983 is at least as great as that for seamen and in both situations the claimant's dependence on potential defendants requires the release [of the cause of action] to be examined with particular care" under a uniform federal standard.

9. There are, concededly, decisions at odds with this general principle in its application to diversity cases. They have applied state law to determine the effect of a settlement of pending litigation without explicitly considering whether to apply a uniform federal rule of decision. *See Lee v. Hunt,* 631 F.2d 1171, 1173–74 (5th Cir.1980), *cert. denied,* 454 U.S. 834, 102 S.Ct. 133, 70 L.Ed.2d 112 (1981); *Hageman v. Signal L.P. Gas, Inc.,* 486 F.2d 479, 487 (6th Cir.1973); *Florida Educ. Ass'n, Inc. v. Atkinson,* 481 F.2d 662, 663 (5th Cir.1973); *Massachusetts Casualty Ins. Co. v. Forman,* 469 F.2d 259, 261 (5th Cir.1972), *cert. denied,* 424 U.S. 914, 96 S.Ct. 1114, 47 L.Ed.2d 319 (1976). With all respect, we do not believe that *Erie* commands application of state law in such circumstances whether jurisdiction is invoked on diversity or federal question grounds, *see Byrd v. Blue Ridge Rural Electric Cooperative, Inc.,* 356 U.S. 525, 535–39, 78 S.Ct. 893, 899–901, 2 L.Ed.2d 935 (1958).

ing the standards by which parties may be relieved from an executory agreement made in connection with an ongoing lawsuit to Fed.R.Civ.P. 60(b) standards for obtaining relief from a judgment based upon an executed settlement). In such situations it can fairly be said that "jurisdiction over the settlement agreement only exists as a derivative of the original federal action," *United States v. Orr Construction Co.,* 560 F.2d 765, 769 (7th Cir.1977). *See also Artvale, Inc. v. Rugby Fabrics Corp.,* 363 F.2d 1002, 1007 (2d Cir.1966) (Friendly, J.) (recognizing "federal interest" in means by which patent infringement claims in litigation may be released).[10]

We therefore believe it proper to apply an independently derived federal standard to govern resolution of the settlement issues raised in this case.

### III

We seek the appropriate federal rule in the usual sources—the best-reasoned decisions in the general common law development of the subject. *See D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 469, 62 S.Ct. 676, 685, 86 L.Ed. 956 (1942) (Jackson, J., concurring). From these sources we find and hold the federal rule of decision to be—at odds with the district court's holding based upon state law[11]—that in appropriate

circumstances a unilateral mistake of fact *may* be the basis for rescinding a settlement agreement.

As expressed in the *Restatement (Second) of Contracts* § 153(a) (1981), the proper rule is that

[w]here a mistake of one party at the time a contract was made as to a basic assumption on which he made the contract has a material effect on the agreed exchange of performances that is adverse to him, the contract is voidable by him if [he does not bear the risk under § 154 and] . . . enforcement of the contract would be unconscionable.

The same principle, derived from the mainstream of judicial decisions, has been expressed by another respected secondary authority as recognizing that avoidance for unilateral mistake

is generally allowed if two conditions concur: (1) enforcement of the contract against the mistaken party would be oppressive, or, at least, result in an unconscionably unequal change of values and (2) rescission would impose no substantial hardship on the other.

J. Calamari & J. Perillo, *Contracts* § 9–27, at 306 (2d ed. 1977); *see also* D. Dobbs, *Remedies* § 11.4 (1973); E.A. Farnsworth, *Contracts* § 9.4 (1982).[12]

---

**10.** "Derivative" federal jurisdiction over settlement issues raised in ongoing federal litigation or by motions seeking relief from federal judgments based upon repudiated settlement agreements was expressly recognized by this court in the *Fairfax County* case discussed *supra* note 7, but was found wanting in the procedural context of that case. *See* 571 F.2d at 1304. The *Fairfax County* court therefore had no occasion to and did not consider the federal/state choice-of-law rule that would have controlled had "derivative" jurisdiction existed there as it does in the instant case.

**11.** In view of our resolution of this appeal, we need not consider whether, if state law were properly controlling, that of North Carolina was properly chosen by the district court to control here nor whether under that law settlement agreements are subject to rescission for unilateral mistake.

**12.** There are intimations of more ancient and compelling federal authority:

[I]f the agreement was made under a clear mistake, the claimants ought to be relieved from it, where it could be done without injury to the opposite party. If a judgment be confessed under a clear mistake, a court of law will set that judgment aside, if application be made, and the mistake shown while the judgment is in its power. An agreement, made a rule of court, to confess a judgment cannot be stronger than a confession itself; and, of course, a party will not be compelled to execute such an agreement, but will be allowed to show cause against the rule in a case where it was plainly entered into under a mistake.

*The Hiram,* 14 U.S. (1 Wheat.) 440, 444–45, 4 L.Ed. 131 (1816) (Marshall, Ch. J.); *cf. Hester v. New Amsterdam Casualty Co.,* 268 F.Supp. 623, 627 (D.S.C.1967) (Russell, J.) (comparing pre- and post-judgment relief from settlement agreements for unilateral mistake).

This principle has in fact been applied in this circuit. In *Hester v. New Amsterdam Casualty Co.*, 268 F.Supp. 623 (D.S.C.1967), Judge Donald Russell of this court, then on the district bench, observed that relief "has been afforded for unilateral mistake 'where the notice (of mistake) was reasonably prompt and the offeree has not altered its position so that relief would work a hardship upon it, and there are no other circumstances which would render it inequitable to grant such relief,'" *id.* at 628 (quoting Annot., 52 A.L.R.2d 792, 803 (1957)). *See also President & Council v. Aetna Casualty & Surety Co.*, 233 F.Supp. 787, 794–95 (D.Md. 1964), *aff'd*, 344 F.2d 331 (4th Cir.1965).[13]

In light of the district court's rejection as a matter of law of Gamewell's attempt to avoid the settlement agreement, we are unable to determine whether the predicates for rescission based upon unilateral mistake under this principle have been established in this case. Whether rescission of the settlement agreement should lie, under the appropriate federal standard, therefore remains an open question that must be determined in the first instance by the district court upon remand.[14]

### IV

The order of the district court entering judgment on the parties' settlement agreement is vacated. The case is remanded to the district court for further proceedings consistent with this opinion.

VACATED AND REMANDED.

CHAPMAN, Circuit Judge, dissenting:

I respectfully dissent for two reasons. First, the majority has decided this case on a legal basis—that federal and not state law controls—that was neither briefed nor argued by the parties.

Second, this does not appear to me to be a proper case to reverse and remand to the district court for further factual inquiry on the substantiality of the mistake and the consequent effect on the bargain struck by the parties. Gamewell has had more than adequate opportunity to present evidence and law on the issue of mistake. Defendant moved for judgment on the settlement agreement on February 18, 1982. On February 22, the district court issued an Order to Show Cause directing the plaintiff to show cause by March 8, 1982 why defendant's motion should not be granted. Prior to the hearing held on April 15, 1982, both parties submitted briefs in support of their positions. In the course of the hearing, the district court invited the parties to submit additional evidence and legal authorities. Only defendant did so. Because Gamewell had approximately two months to present material to the district court, I see no reason to remand the case now for further factual development. Plaintiff should not be afforded yet another opportunity to be relieved of the consequences of its prior failures to act.

---

13. *Hester* has been cited with approval for this principle in two other decisions within this circuit. *See Future Plastics, Inc. v. Ware Shoals Plastics, Inc.*, 407 F.2d 1042, 1047 (4th Cir. 1969); *Addison v. Sommers*, 404 F.Supp. 715, 718 (D.Md.1975). *Cf. Maryland Casualty Co. v. Rickenbaker*, 146 F.2d 751, 753 (4th Cir.1944) (stipulation narrowing issues for trial would not be binding when based upon unilateral mistake of fact as to insurance policy coverage); *Brast v. Winding Gulf Colliery Co.*, 94 F.2d 179, 181 (4th Cir.1938) (party could seek relief from an agreement it had executed based upon a mistaken apprehension of prevailing law).

14. Gamewell also advanced below and on this appeal two other contentions: that the mistake was in fact a mutual one; and that the agreement was, in any event, not formally executed by the parties. The district court, on amply supported findings of fact, rejected both of these contentions and we find no error in their rejection. Accordingly they are foreclosed from further inquiry upon remand.