James Arthur COLESON, Plaintiff,

v.

The INSPECTOR GENERAL OF the
DEPARTMENT OF DEFENSE, et
al., Defendants.

Civ. A. No. 88–803–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 28, 1989.

James Arthur Coleson, Portsmouth, Va.,
pro se.

J. Phillip Krajewski, Asst. U.S. Atty.,
Norfolk, Va. and Robin Teichman, Office of
Counsel Space and Naval Warfare Systems
Command, Dept. of the Navy, Washington,
D.C., for defendants.

## MEMORANDUM OPINION
## AND ORDER

DOUMAR, District Judge.

This opinion considers the defendants'
motion to dismiss the complaint or for sum-
mary judgment. The plaintiff having pro-
ceeded pro se was granted a hearing in
open court to present any and all reasons in
opposition thereto. After a full considera-
tion of all materials submitted, for the rea-
sons stated below, the defendants' motion
for summary judgment is GRANTED.

## I. BACKGROUND

On December 1, 1988, the plaintiff, pro-
ceeding in forma pauperis, filed this ac-
tion pro se. The complaint makes various
claims regarding the plaintiff's former em-
ployment at the Naval Electronic Systems
Engineering Center in Portsmouth, Virgi-
nia (hereinafter "NESEC"), which began in
December, 1980. The plaintiff claims that
he reported "fraud, waste, abuse, misman-
agement and inefficiency" at NESEC to
each of the defendants, in accordance with
applicable regulations, but that as a result
of doing so, the defendants harassed him,
discriminated against him, initiated four in-
vestigations against him, persecuted him
daily for eight months, and ultimately

forced him to resign, this resignation constituting a constructive discharge. The time period during which these events allegedly occurred was February 14, 1987 to April 30, 1988, the date on which the plaintiff resigned from his employment at NESEC. The plaintiff further claims to have been "black balled" from employment in the Department of Defense because he was a "whistleblower," making it impossible for him to obtain employment in any government agency. As a result of the alleged misconduct of the defendants, the plaintiff claims to have suffered "severe mental, physical, emotional and economic distress." [1] As relief, the plaintiff seeks ten percent of the cost of the fraud, waste, abuse, and mismanagement which the plaintiff identified; reinstatement to his position as a "management analyst, GS–343–11, Step 5"; back pay with interest; Five Million Dollars ($5,000,000) compensatory damages for a blood clot in his left arm allegedly caused by the actions of the defendants; Ten Million Dollars ($10,000,000) in punitive damages; costs; attorney's fees; and "castigation" of the defendants who took actions against him. The defendants named in the complaint are outlined below.

Defendant NESEC in Portsmouth, Virginia, was the naval facility at which the plaintiff was employed.

Defendant Karen E. Mundie was the Head of the Management and Administrative Services Division at NESEC, beginning in September of 1987. She was the first level supervisor of the plaintiff from September, 1987 to the plaintiff's resignation on April 30, 1988. She was selected for this position over the plaintiff, who had also applied for it.

Defendant R.K. Chari was the head of the Resources Management Department at NESEC. He was the second level supervisor of the plaintiff until the plaintiff's res-

ignation. He recommended that defendant Mundie rather than the plaintiff be given the position of Head of the Management and Administrative Services Division. He also denied to the plaintiff a within-grade promotion on the grounds that the plaintiff's performance was "marginal" rather than "satisfactory."

Defendant Eugene G. Newman was the Technical Director at NESEC. As such, he was the third level supervisor of the plaintiff. He selected defendant Mundie rather than the plaintiff for the position of Head of the Management and Administrative Services Division. He was also the reviewing official of the plaintiff's performance appraisal, said appraisal resulting in denial by defendant Chari to the plaintiff of a within-grade promotion. The plaintiff implies that Newman has libeled him by causing the publication of a certain report describing the plaintiff.

Defendant Captain Richard H. Holt was the Commanding Officer at NESEC. As such, he was the fourth level supervisor of the plaintiff. He reviewed defendant Newman's selection of defendant Mundie rather than the plaintiff for the. position of Head of the Management and Administrative Services Division, and informed the plaintiff that Mundie's selection was appropriate.

Defendant Space and Naval Warfare Systems Command of the Department of the Navy (hereinafter "SPAWAR") was the headquarters activity for NESEC. The plaintiff claims that the SPAWAR commander libeled him by causing the publication of a certain report describing him as unfit.[2]

The plaintiff claims that defendant Inspector General of the Department of the Navy was informed of the actions taken against him by the other defendants, and not only allowed it to continue but, in fact, encouraged it.

---

1. The plaintiff also claims that his family has been similarly harmed. Because it is obvious that the plaintiff lacks standing to press any claims that his family members may have, such claims of his family members are not discussed further.

2. He claims that two attorneys for SPAWAR who are not named as defendants slandered him by publicly questioning his loyalty to the United States. Because these attorneys are not named as defendants, these claims will not be considered.

The plaintiff makes allegations against the Inspector General of the Department of Defense similar to those made against the Inspector General of the Department of the Navy.

Several motions have been filed. On January 25, 1989, the plaintiff filed a motion for a restraining order. On February 10, 1989, the defendants filed a motion to dismiss or, in the alternative, for summary judgment. And on February 17, 1989 and on March 6, 1989, the plaintiff filed a motion for a "continuance" or, in the alternative, for summary judgment. Because the Court grants the defendants' motion for summary judgment, the other motions need not be and are not addressed. Furthermore, one of the several groups argued in support of the defendants' motion for summary judgment—the effect of a release in a settlement agreement signed by the plaintiff—is dispositive. Consequently, only that ground will be discussed.

## II. JURISDICTION

The jurisdiction of the Court arises from a number of sources.

The plaintiff presented his cause of action as a claim under the False Claims Act, 31 U.S.C. §§ 3729-3733. He specifically pointed to a statutory provision which he read in a law review article, and which was identified in that article as being codified at 31 U.S.C. § 3734. While there is no 31 U.S.C. § 3734, the material to which the plaintiff refers was in substance codified at 31 U.S.C. § 3730(h). Section 3730(h) provides:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with

the same seniority status such employee would have had but for the discrimination, two times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

These statutory protections of section 3730(h) extend to persons who bring a *qui tam* action, pursuant to section 3730(b), for violations of 31 U.S.C. § 3729, which provides for liability of persons making false claims upon the United States government or armed forces.

Although the plaintiff has not claimed the Court's jurisdiction under these provisions, it is also possible that the plaintiff has presented a claim under the Whistleblower Protection Act of 1989, Pub.L. No. 101-12, 103 Stat. 16-35 (1989) (to be codified at 5 U.S.C. § 1201 note). The Act provides federal employees with protections from employment practices prohibited under 5 U.S.C. § 2302(b)(8), one of which prohibited employment practices is a superior's taking or failing to take a personnel action regarding an employee as a reprisal for a disclosure of information by the employee which the employee reasonably believes evidences mismanagement, a gross waste of funds, or an abuse of authority. The Act provides to employees a private cause of action for claims under the Act, which action must be presented before the Merit Systems Protection Board, and the decision on which can be reviewed by a United States District Court. *See* 103 Stat. 29-31 (to be codified at 5 U.S.C. § 1221).

Finally, the Court's jurisdiction also arises under the United States Constitution, as the plaintiff appears to present a claim under *Bivens v. Six Unknown Agents of the FBI*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for violation of due process by constructive discharge.

It is not necessary for the Court to consider the merits of the plaintiff's causes of action under each of these theories, be-

cause the release executed by the plaintiff in a settlement agreement bars any and all causes of action which the plaintiff may have had.

### III. THE SETTLEMENT AGREEMENT

On April 28, 1988, the plaintiff entered into a settlement agreement. The settlement agreement provides by its terms that it is entered into by plaintiff Coleson and defendant NESEC. The signatories to that agreement were plaintiff Coleson, the plaintiff's attorney, defendant Holt, two agency representatives, and a labor relations specialist. The agreement states that it was entered into in settlement of the plaintiff's equal employment opportunity complaint, DCIC Case No. E–88–031 (filed Sept. 21, 1987), which charged age discrimination, sex discrimination, and reprisal, and which complaint was denied; that denial's appeal to the Merit System Protection Board (MSPB), MSPB Appeal PH53108810245 (filed Mar. 17, 1988); and any other informal or formal equal employment opportunity complaint regarding the plaintiff's performance appraisal for the period ending December 31, 1987, or regarding allegations of discrimination "involving NESEC, Portsmouth." The plaintiff was represented by counsel when he entered into this agreement, and the plaintiff does not assert that it is voidable for fraud, duress, or any other reason. The settlement agreement contains the following provision:

> James A. Coleson further agrees not to institute any action or actions arising out of his employment with Naval Electronics System Engineering Center, Portsmouth, including, but not limited to, the allegations of discrimination contained in the ... EEO complaint of September 21, 1987, the allegations contained in the MSPB Appeal of March 17, 1988 including those of reprisal and discrimination or the allegations contained in the informal or formal EEO complaint involving discrimination and/or reprisal under either Federal or State statute, or the Constitution of the United States or of a State, in either a Federal or State Admin-

istrative body, or Federal or State Court....

One ground for summary judgment argued by the defendants is that the settlement agreement disposed of all claims arising out of the plaintiff's employment with NESEC, and that by virtue of the above-quoted terms of that agreement, the plaintiff has agreed not to file claims such as those presented in this civil action. The Court, argue the defendants, should enforce the settlement agreement by dismissing the complaint or by granting summary judgment to the defendant. The question before the Court, therefore, is whether the above-quoted language in the settlement agreement constitutes a release of the plaintiff's claims against any or all of the defendants in this civil action. In the opinion of the Court, it does serve as such a release, and the release applies to all of the defendants.

### IV. LAW

#### A.

At the outset, it is necessary to determine what law applies in this case to the issue of release. The general rule is that the construction and enforcement of settlement agreements, including the determination as to the validity and scope of a release therein, are governed by the general contract principles under state law. *See White v. United States Department of Interior,* 639 F.Supp. 82, 86 (M.D.Pa.1986), *aff'd,* 815 F.2d 697 (3d Cir.1987). This, however, is not always the case. When a release or a settlement agreement impacts upon significant federal rights or interests, federal common law controls the interpretation of that release or agreement. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 343–48, 91 S.Ct. 795, 808–11, 28 L.Ed.2d 77 (1971); *Gamewell v. Manufacturing, Inc. v. HVAC Supply, Inc.,* 715 F.2d 112, 115 (4th Cir.1983); *Jones v. Taber,* 648 F.2d 1201, 1203 (9th Cir.1981) ("conditions affecting the validity of a release of significant federal rights are eminently a matter of federal law"); *Fulgence v. McDermott & Co.,* 662 F.2d 1207, 1209 (5th Cir.1981) ("creation of a federal

rule ... is appropriate where, as here, the rights of the litigants and the operative federal policies derive from a federal source"); *White,* 639 F.Supp. at 87. This principle has been applied in a number of federal contexts.

For example, it has been held that the effect of a settlement or release entered into regarding litigation which has already begun in a federal court is controlled by federal common law principles, because such a settlement or release implicates federal procedural interests. *See Gamewell,* 715 F.2d at 115.[3] The release of admiralty and maritime claims is also governed by federal common law. *See Garrett v. Moore–McCormack Co.,* 317 U.S. 239, 243–48, 63 S.Ct. 246, 249–52, 87 L.Ed. 239 (1942) (Jones Act). So too is the release of federal statutory causes of action controlled by federal law. *See Parker v. DeKalb Chrysler Plymouth,* 673 F.2d 1178, 1180 (11th Cir.1982) (release of claims arising under the Truth in Lending Act, 15 U.S.C. § 1601 et seq.); *Maynard v. Durham & Southern Railway Co.,* 365 U.S. 160, 161, 81 S.Ct. 561, 562, 5 L.Ed.2d 486 (1961) (Federal employers' Liability Act); *Dice v. Akron, Canton & Youngstown Railroad Co.,* 342 U.S. 359, 361–62, 72 S.Ct. 312, 314, 96 L.Ed. 398 (1952) (Federal Employers' Liability act); *Locafrance U.S. Corp. v. Intermodal Systems Leasing, Inc.,* 558 F.2d 1113, 1115 (2d Cir.1977) (federal securities law); *Theatre Time Clock Co. v. Motion Picture Advertising Corp.,* 323 F.Supp. 172, 175 (E.D.La.1971) (antitrust); *Bergstrom v. Sears, Roebuck and Co.,* 532 F.Supp. 923, 932 (D.Minn.1982) (patent infringement); *White,* 639 F.Supp. at 86 (Federal Tort Claims Act) (*but see Montellier v. United States,* 315 F.2d 180, 184 (2d Cir.1963) (state law applies to validity and effect of release under Federal Tort Claims Act)).

A release of a civil rights claim has in particular been held to be controlled by federal common law, and this has been true for civil rights arising from a number of sources.[4] Such is the rule regarding a release of claims arising under 42 U.S.C. § 1983, *see Jones,* 648 F.2d at 1203; *Boyd v. Adams,* 513 F.2d 83, 87 (7th Cir.1975); under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq., see Fulgence,* 662 F.2d at 1209; and under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq., see Ott v. Midland–Ross Corp.,* 523 F.2d 1367 (6th Cir.1975); *Runyan v. NCR Corp.,* 573 F.Supp. 1454, 1458 (S.D.Ohio 1983), *aff'd,* 787 F.2d 1039 (6th Cir.), *cert. denied,* 479 U.S. 850, 107 S.Ct. 178, 93 L.Ed.2d 114 (1986). And the appliability of federal law to questions regarding the validity of a release of a civil rights claim for damages against federal officials, i.e., a constitutional tort claim under *Bivens v. Six Unknown Agents of the FBI,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), has been recognized by at least one court of appeals. *See Salmeron v. United States,* 724 F.2d 1357, 1360–61 (9th Cir.1983).

█ In the instant case, the plaintiff claims that federal officials have violated his constitutional rights by constructively discharging him. His principal claim is therefore one under *Bivens.* He also makes claims under purported federal statutory provisions providing rewards and protection for "whistleblowers." His claims therefore arise wholly under federal law. Moreover, they involve exclusively federal officials, and concern actions allegedly taken against him in connection with his federal employment. The settlement agreement was entered into in this wholly federal context. Consequently, the agreement, and the release therein, must be de-

---

**3.** Certain cases have indicated otherwise, but the view of those cases has been repudiated in the Fourth Circuit. *See* 715 F.2d at 115 n. 9.

**4.** In *Brookhart v. Janis,* 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966), it was said, "The question of a waiver of a federally guaranteed constitutional right is, of course, a federal question controlled by federal law." 384 U.S. at 4, 86 S.Ct. at 1245. This statement was made in regard to an alleged waiver by a criminal defendant of his right to be confronted by the witnesses against him and to cross examine those witnesses. It is instructive, however, in that it illustrates that whether a federally protected right has been relinquished is a question of federal law.

cided in accordance with federal common law.

## B.

■ The next question is, under federal common law, who was released by the settlement agreement? In determining the scope of a release, federal common law looks to the intentions of the parties. Under federal common law, a release serves to release only those persons whom the releasing party intended to release. *See Zenith*, 401 U.S. at 343–48, 91 S.Ct. at 808–11 (antitrust); *Gamewell*, 715 F.2d at 114, n. 4 (patent infringement); *Locafrance*, 558 F.2d at 1115 (federal securities law). The Court finds that the clear intent of the parties in signing the agreement was that the plaintiff release all claims against all of the defendants in this action, and indeed against anyone against whom he may have a claim arising from his employment at NESEC. Consequently, the release applies to all the defendants in the instant civil action.

The clearest manifestation of this intent is the express terms of the written agreement. The plaintiff agreed not to institute "any action or actions arising out of his employment with" NESEC. The release therefore did not seek to foreclose actions by the plaintiff against particular persons. Instead, it sought to put a final and complete end to actions against any and all persons connected with his employment by NESEC. Furthermore, while the release addressed the claims which he had at that time brought, i.e.,

> the allegations of discrimination contained in the ... EEO complaint of September 21, 1987, the allegations contained in the MSPB Appeal of March 17, 1988 including those of reprisal and discrimination or the allegations contained in the informal or formal EEO complaint involving discrimination and/or reprisal under either Federal or State statute, or the Constitution of the United States or of a State ...

it expressly provided that the release was "not limited to" these claims. And the release applied to claims "in either a Feder-

al or State Administrative body, or Federal or State Court." The inescapable conclusion arrived at from reading the release is that if the plaintiff agreed to and intended to put a complete and final end to litigation involving claims of any nature, against any persons, involving the plaintiff's employment with NESEC, in exchange for the consideration promised to and received by the plaintiff.

## C.

The plaintiff here seeks to avoid the release. Under federal law, plaintiff has the burden, when seeking to avoid a release, of showing that such avoidance is appropriate. *See Loose v. Consolidated Rail Corp.*, 534 F.Supp. 260, 262 (E.D.Pa.1982). The plaintiff does not claim that the release was tainted by fraud or mutual mistake, nor does he claim that the settlement agreement was supported by inadequate consideration. He does not claim that his decision to enter the settlement agreement was coerced, or that it was not deliberate and informed. He acknowledges that he was represented by counsel at the time he entered the settlement agreement, which counsel he concedes was extremely knowledgeable in matters such as his. In attempting to avoid the release, the plaintiff makes two arguments.

### i.

■ First, he argues in his pleadings that the agreement was valid and binding, but that it applied only to his EEO complaints and not to subsequent civil actions. This claim, however, is clearly and unmistakably negated by the express words of the agreement:

> James A. Coleson further agrees not to institute *any action or actions* arising out of his employment with Naval Electronics System Engineering Center, Portsmouth, *including, but not limited to,* the allegations of discrimination contained in the ... EEO complaint of September 21, 1987 ... (emphasis added).

It is inherently incredible that a person of the plaintiff's obvious intelligence and extensive education could misunderstand the import of this language. This conclusion is

buttressed by the fact that the plaintiff's former job at NESEC involved careful attention to detail in complex matters. Much of the factual background of his action concerns the fact that the plaintiff complained loudly about his careful analysis of matters at NESEC should have been given greater consideration by his superiors. An individual possessing such superior analytic ability and practicing such attention to detail cannot now be heard to complain that he did not understand plain language in his settlement agreement.

### ii.

█ The second argument offered by the plaintiff in attempting to avoid the release was first heard at the hearing held in open court on June 19, 1989. At that hearing he argued that he was "mentally exhausted" when he entered into the settlement agreement. Thus, the plaintiff has apparently repudiated his original recognition of the agreement's validity (his first argument going only to the scope of the agreement), and now seeks to attack the agreement *en toto*. The Court has grave doubts as to whether this "mental exhaustion" alleged by the plaintiff could provide the basis for relief from the agreement, even if accompanied by appropriate proof. It bears striking similarity to the arguments rejected in *Asberry v. United States Postal Service*, 692 F.2d 1378, 1380–81 (Fed.Cir.1982), where a plaintiff sought to avoid a settlement agreement on the grounds of "economic duress." The plaintiff, in support of this claim, is unable to offer any proof or evidence of any kind other than a bald statement made at the hearing. This is unacceptable.

### D.

It is the policy of this Court to encourage the settlement of disputes. *See Williams*

*v. First National Bank*, 216 U.S. 582, 595, 30 S.Ct. 441, 445, 54 L.Ed. 625 (1910); *Hemstreet v. Speigel, Inc.*, 851 F.2d 348, 350 (Fed.Cir.1988) ("the law strongly favors settlement of disputes, and there is a compelling public interest and policy in upholding and enforcing settlement agreements voluntarily entered into"); *Bergh v. Department of Transportation, FAA*, 794 F.2d 1575 (Fed.Cir.), *cert. denied*, 479 U.S. 950, 107 S.Ct. 437, 93 L.Ed.2d 386 (1986); *Duplan Corp. v. Deering Milliken, Inc.*, 540 F.2d 1215, 1221 (4th Cir.1976); *Ransburg Electro–Coating Corp. v. Spiller & Spiller, Inc.*, 489 F.2d 974, 978 (7th Cir. 1973); *Pfizer, Inc. v. Lord*, 456 F.2d 532, 543 (8th Cir.), *cert. denied*, 406 U.S. 976, 92 S.Ct. 2411, 32 L.Ed.2d 676 (1972); *Bergstrom*, 532 F.Supp. at 932; *Theatre Time Clock Co.*, 323 F.Supp. at 174 ("voluntary settlements of civil controversies are highly favored by courts and a valid agreement once reached, cannot be repudiated by the parties"). This policy would not be furthered by allowing the plaintiff to escape the consequences of a settlement agreement pursuant to which all the parties to this action expected litigation to be foreclosed. It appears that what in fact happened here is that the plaintiff, after entering the agreement, decided he had made a bad deal. It is not the function of the Court, however, to relieve intelligent and educated people of the bargains they choose to strike.[5] The Court finds that there is no genuine issue of material fact as to the intended effect of the release contained in the settlement agreement, and consequently the defendants' motion for summary judgment is GRANTED.

IT IS SO ORDERED.

---

**5.** If the defendants have breached the settlement agreement, then this might provide a cause of action for the plaintiff. The plaintiff, however, does not in this action seek redress for the breach of the settlement agreement. Rather, he seeks to litigate the claims which he expressly agreed not to litigate.