Amile A. and Parvane S. KORANGY, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 89–2675.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 30, 1989.

Decided Jan. 2, 1990.

John Hardin Young (Porter, Wright, Morris & Arthur; Michael A. Fracassi, Washington, D.C., on brief), for petitioners-appellants.

Michael James Roach (Shirley D. Peterson, Asst. Atty. Gen.; Gary R. Allen, Gilbert S. Rothenberg, Tax Div., U.S. Dept. of Justice, Washington, D.C., on brief), for respondent-appellee.

Before WILKINS, Circuit Judge, WINTER, Senior Circuit Judge, and MOTZ, District Judge for the District of Maryland, sitting by designation.

MOTZ, District Judge:

Amile and Parvane Korangy appeal from a decision of the Tax Court denying their motion to modify or vacate a Stipulation of Agreed Adjustments into which they entered with the government. In the stipulation the Korangys agreed that there was a deficiency in the amount of $270,415.00 in their personal income tax for the taxable year 1982. They now contend that they made an error in compiling a list which was used during the negotiations leading to the stipulation and that the stipulation therefore should not be enforced against them.

## I.

The Internal Revenue Service conducted an investigation of the Korangys. During the investigation the IRS found, *inter alia,* unexplained bank deposits of $637,647.00 made by the Korangys during the 1982 tax year. The IRS issued a notice of deficiency which the Korangys challenged by filing a petition in the Tax Court.

As the trial date approached, counsel for the Korangys entered into settlement negotiations with the government, conceding that some of the bank deposits represented unreported income but insisting that others did not. During the negotiations a list was prepared by the Korangys' lawyers and accountants which broke down the IRS's total of unexplained deposits into deposits which the Korangys conceded to be "unexplained" and those which they asserted were satisfactorily explained.

One of the deposits, in the amount of $227,987.50, related to a transfer which had purportedly been made by the Korangy Radiology Associates, Inc. Pension Plan to one of the Korangys' accounts for the purpose of permitting the Plan to purchase an interest in certain property located in Indian River County, Florida. The Korangys were contending that this deposit was "explained," and, according to them, it should have been placed under the category of "explained" deposits on the list which their attorneys and accountants prepared. Subsequently, according to the Korangys, they and the government engaged in deposit-by-deposit negotiations, and during the course of these negotiations they conceded that the $227,987.50 deposit did reflect reportable income. Therefore, it was deducted from the "explained deposit" category. However, the Korangys allege, the deposit had inadvertently been omitted from the "explained deposits" category in the first instance. Thus, they argue that it was counted twice in determining their taxable income, and this error resulted in an overstatement of the tax deficiency.[1]

The government denies that the parties engaged in deposit-by-deposit negotiations. Rather, it asserts that the Korangys did not submit sufficient information to the appeals officer handling the case to permit a detailed analysis of individual bank deposits and that, after attempting to go through each deposit and resolve the case on that basis, "he put his hands up in frustration and said, 'I can't do it, if I'm going to resolve this case I'm going to come to a bottom line figure, and that bottom line figure is not going to be an exact number, it's going to be a number that I am willing to accept to resolve this case.'" It was this number which, according to the government, was finally reflected in the Stipulation of Agreed Adjustments entered into between the parties.

The list referred to by the Korangys was not appended to. the stipulation. Instead, attached to it was a schedule which merely categorized the various sources of alleged unreported income and, as to each, the aggregate amount of the original adjustment and the amount conceded by the government and the Korangys.

Counsel for the Korangys and counsel for the government signed the stipulation on May 21, 1988. At the calendar call, the

---

1. The Korangys' counsel on appeal were not representing them during the Tax Court pro- ceedings.

stipulation was filed with the Tax Court and the Korangys' counsel requested a continuance of sixty days to enable the parties to prepare a settlement document reflecting the deficiencies resulting from the adjustments to which they had agreed. The Court granted the continuance and directed the parties to file an agreed settlement document by July 22. The day before that deadline was to expire, counsel for the Korangys wrote a letter to counsel for the government suggesting a deficiency of $270,415.00 for the 1982 tax year. This deficiency was based upon an adjustment which included the $227,987.50 deposit now in question.

On August 12, 1988, pursuant to Tax Court Rule 155, the government submitted its computations of the tax deficiency. On September 6, 1988, the Korangys filed their alternative computations for entry of decision which differed from the government's computations as a result of what the Korangys asserted was the $227,987.50 deposit error. Simultaneously, the Korangys filed their motion to vacate or modify the settlement stipulation.

The Tax Court held a hearing on the Korangys' motion in due course. Neither side presented witnesses or affidavits at the hearing. Nor did the Korangys submit as an exhibit the list of deposits upon which their claim of mistake rested. After the hearing the court issued a written opinion in which it found that if any mistake had been made, it was a unilateral mistake committed by the Korangys. The court stated that "if ... [the Korangys] thought that they were agreeing to inclusion in their taxable income only of specific deposits, rather than a lump-sum dollar amount or agreeing to the settlement based upon the accuracy of specified underlying documentation supporting the adjustment schedules, they should have made sure the Stipulation reflected any such condition." *Korangy v. Commissioner*, 56 T.C.M. (CCH) 989, 991, 1989 WL 98 (1989). Citing its own opinion in *Stamm International*

*Corp. v. Commissioner*, 90 T.C. 315 (1988),[2] the court denied the Korangys' motion to modify or vacate. *Id.*

## II.

The Korangys contend on appeal that even if, as found by the Tax Court, their mistake was unilateral, they should nevertheless have been permitted to rescind the settlement stipulation. In support of this contention, they cite *Gamewell Manufacturing, Inc. v. HVAC Supply, Inc.*, 715 F.2d 112 (4th Cir.1983).

### A.

*Gamewell* was a patent infringement case. It was docketed to be tried non-jury during the week of February 15, 1982. On February 14, plaintiff's counsel indicated to counsel for defendants that plaintiff was willing to accept a settlement offer made by defendants two days before. A written agreement was prepared for formal execution, and the parties informed the district court on the morning of February 16 that a settlement had been reached.

According to the plaintiff, it was prompted to enter into the settlement by the results of comparative tests which it had commissioned early in February from an independent testing laboratory and which showed that there was little difference between its patented technology and the existing pre-patent technology. However, on February 16, the very day that the settlement agreement was to be executed and on which the parties advised the court that the case had been settled, the plaintiff discovered that it had mistakenly supplied to the testing laboratory two samples of its own patented technology, rather than one pre-patent system and one of its own patented systems. Therefore, the test results had been essentially meaningless. The plaintiff then had new tests conducted with the proper samples, and the results of these tests showed that there was a substantial

---

**2.** In *Stamm* the Tax Court refused to permit the government to withdraw from a settlement stipulation after government counsel learned that he had seriously erred in calculating the tax

effects of the agreement which he made and had conceded substantially more of the asserted deficiency than he intended.

difference between the two technologies. On February 18, the plaintiff advised defendants that it would not proceed with the settlement and asked the court to have the case reinstated on its docket. The defendants, in turn, filed a motion for judgment on the settlement agreement.

The trial court granted the defendants' motion and enforced the settlement agreement against the plaintiff. *Id.* at 113. It found that no mutual mistake had been made and, applying North Carolina law, found that as a matter of law a unilateral mistake is not a basis for avoiding a contractual agreement.

This Court reversed. It held that federal law applies to the question of the binding effect of a settlement agreement reached in a case pending in federal court. It further held that under federal law a party may rescind a contract because of unilateral mistake if enforcement of the contract would be "unconscionable" or "oppressive" and if rescission would not impose a substantial hardship on the other party. *Id.* at 116. Accordingly, the case was remanded to the District Court for factual findings on those issues. *Id.* at 117.

### B.

We find that absent a far more detailed and compelling proffer than the Korangys made, the Tax Court was fully justified in denying the Korangys' motion as it did without creating an evidentiary record. It should be noted in this regard that the present case differs from *Gamewell* in several respects.[3]

First, in *Gamewell* the plaintiff brought its mistake to the attention of the defendant and the court within days of its occurrence and discovery. Here, more than three months passed between the time that the parties entered into the Stipulation of Agreed Adjustments and the time that the Korangys filed their motion to vacate. In the interim the Korangys had repeated

their error by proposing to the government in their July 21 letter a deficiency based upon an adjustment including the $227,-987.50 deposit which they now claim should have been excluded.

Secondly, the plaintiff's alleged mistake in *Gamewell* was easily verifiable by reference to a third party source: the independent laboratory which conducted the testing of the systems. Although the Korangys claim that their mistake is reflected on a list used during negotiations, that list itself (which was never made a part of the record) would not by itself, apart from testimony concerning the analyses made by the Korangys and their representatives, demonstrate that a mistake had in fact been made. A court need not be swayed by, or meticulously probe on its own initiative, a conclusory declaration that a party (at least one who was represented by counsel) believed that the basis for a settlement stipulation was something other than that recited in the stipulation itself.

Thirdly, it is not every unilateral mistake, but only one which would lead to an unconscionable or oppressive result, which warrants the rescission of a settlement agreement. In *Gamewell* the nature of the mistake alleged to have been made itself strongly suggested that enforcement of its terms against the plaintiff would be unconscionable and oppressive. Absent a factual finding made by the trial court to the contrary, it is reasonably inferable that the amount of settlement proceeds paid to a plaintiff who believed that its patent was unenforceable would be grossly inadequate if, in fact, the patent was enforceable. Here, in contrast, there is nothing self-evidently oppressive or unconscionable about the settlement reached between the Korangys and the government, even assuming that the Korangys made the mistake which they allege. The mere fact that the deficiency assessed is greater than they believe it should have been is not itself determinative. This is particularly true since the

---

**3.** This Court has previously limited *Gamewell* on another ground. In *Auer v. Kawasaki Motors Corp., USA,* it held that state law determines the effect of settlement agreements implicating third parties whose rights and duties derive

from state law. *Auer,* 830 F.2d 535, 538 (4th Cir.1987), *cert. denied, Ebaugh v. Cessna Aircraft Co.,* 485 U.S. 905, 108 S.Ct. 1076, 99 L.Ed.2d 236 (1988).

Korangys received other benefits under the settlement by virtue of the concessions which the government made when entering into the stipulation.

As *Gamewell* properly recognizes, federal courts must not be stripped of their inherent equitable power by the dictates of a strict and inflexible rule requiring them to enforce a settlement mistakenly entered into which is unconscionable and oppressive in its consequences. However, to interpret *Gamewell* as requiring an exhaustive factual hearing in every case where a claim of unilateral mistake is made concerning (a) the parties' thought processes during the course of the settlement negotiations, and (b) the equities of the settlement agreement would be to wreak havoc upon the ability of trial courts to control their dockets. Such hearings would be time-consuming beyond measure, and, more critically, the establishment of such a requirement would encourage after-the-fact challenges to settlements made by litigants who become disgruntled with their agreements after the moment of decision has passed. The salutary rule of *Gamewell* was not intended to have such pernicious effects.

### III.

The Korangys' final contention is that the Tax Court erred in not exercising its power under Tax Court Rule 91(e) to permit them to withdraw from the stipulation. I.R.C. app. at 1130 (1987). That rule provides in pertinent part that "[t]he Court will not permit a party to a stipulation to qualify, change, or contradict a stipulation in whole or in part, except that it may do so where justice requires." This standard imposes no greater duty upon the court to permit parties to rescind stipulations than does the *Gamewell* formulation. Accordingly, the Korangys' contention under Rule 91(e) fails for the same reasons which have been previously stated.

AFFIRMED.