Marlene PARKER, Plaintiff-Appellee,

v.

DeKALB CHRYSLER PLYMOUTH,
Defendant-Appellant.

No. 81–7186.

United States Court of Appeals,
Eleventh Circuit.

April 19, 1982.

Burgess W. Stone, Atlanta, Ga., for defendant-appellant.

Ralph Goldberg, Atlanta, Ga., for plaintiff-appellee.

Before THORNBERRY,* FAY and HATCHETT, Circuit Judges.

THORNBERRY, Circuit Judge:

DeKalb Chrysler Plymouth of Decatur, Georgia, appeals from the district court's grant of summary judgment in favor of Marlene Parker, which finds DeKalb in violation of the Truth in Lending Act (TILA), 15 U.S.C. § 1601 *et seq.* The sole issue in this appeal is whether a general release discharging DeKalb from any claims arising out of the purchase of an automobile constitutes a valid waiver of Parker's claims under TILA. We hold the release invalid and affirm the judgment of the district court.

## I. FACTS

On April 27, 1977, Parker purchased a new Chrysler Cordoba automobile from DeKalb. She financed the car through a conditional sales contract, wherein she agreed to pay a deferred payment price of $10,200.25 in thirty-six equal monthly installments. DeKalb assigned the sales contract to Fidelity National Bank.[1] On May 2, 1977, Parker returned to DeKalb and executed a general release. For $500.00, Parker discharged DeKalb from any claims arising out of the purchase of her Cordoba. The release provides:

TO WHOM IT MAY CONCERN:

For and in consideration of $500.00, I, Marlene V. Parker, hereby release and forever discharge DeKalb Chrysler-Plymouth, Inc., its agents and employees, from any and all claims from the beginning of the world to the date of these presents including but not limited to any claim I

may have of any kind arising out of my purchase of a 1977 Chrysler Cordoba, Serial # SS22N7R104452.

Parker claims that when she signed the release she believed that it covered the mechanical difficulties she had been having with her car. According to Parker, DeKalb never disclosed any information about her rights under TILA. On June 14, 1977, less than two months after signing the release, Parker brought this action alleging violations of both TILA and Subchapter IV of the Motor Vehicle Information and Cost Savings Act, 15 U.S.C. § 1981 *et seq.* (Odometer Act). The district court granted appellant's motion for summary judgment on Parker's claim under the Odometer Act, and Parker has not appealed its decision.

## II. IS THE RELEASE A VALID WAIVER OF APPELLANT'S TILA CLAIM?

■ The district court found that DeKalb violated TILA by failing to disclose Parker's waiver of her homestead and exemption rights. The TILA disclosure form stated on the back that the buyer "waives homestead and exemption rights as against this obligation." This notation is inadequate, however, because assignment of homestead and exemption rights under Georgia law creates a security interest that must be disclosed on the face of the document. *See Hamilton v. Southern Discount Co.*, 656 F.2d 150, 151 (5th Cir. 1981); *Elzea v. National Bank of Georgia*, 570 F.2d 1248, 1250–51 (5th Cir. 1978). DeKalb does not deny its TILA violation.[2] Rather, admitting non-compliance, DeKalb contends that Parker's signature on the general release bars her TILA claim.

---

* Honorable Homer Thornberry, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. Parker originally brought this action against DeKalb and Fidelity. The suit against Fidelity was settled, however, before the district court granted Parker's motion for summary judgment on her TILA claim.

2. DeKalb argued in the court below that the responsibility of ensuring disclosure of an as-

signment of homestead and exemption rights fell on Fidelity as the credit extender and not DeKalb as the credit arranger. *See Price v. Franklin Investment Co., Inc.*, 574 F.2d 594, 599 (D.C.Cir.1978); *Meyers v. Clearview Dodge Sales, Inc.*, 539 F.2d 511, 514–16 (5th Cir. 1976), *cert. denied sub nom.* 431 U.S. 929, 97 S.Ct. 2633, 53 L.Ed.2d 245 (1977). Since DeKalb has abandoned this argument, at least for the purpose of this appeal, we do not address its merits.

■ Neither the Truth in Lending Act nor any circuit court has resolved the problem of whether a person may waive a TILA claim.[3] We, therefore, have considered this issue in light of analogous cases and in view of Congress' intent in passing TILA. Federal law guides our reasoning because the issues relating to the validity of and defenses to purported releases of federal statutory causes of action are matters of federal law. *See Dice v. Akron, Canton & Youngstown Railroad Co.*, 342 U.S. 359, 361–62, 72 S.Ct. 312, 314, 96 L.Ed. 398 (1952) (FELA case); *Locafrance U. S. Corp. v. Intermodal Systems Leasing, Inc.*, 558 F.2d 1113, 1115 (2d Cir. 1977) (federal securities law claims); *Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1368–69 (6th Cir. 1975) (age discrimination claim). Congress passed TILA in part to encourage consistent and fair treatment of borrowers. H.R.1040, 90th Cong., 2d Sess. (1968), *reprinted in* [1968] U.S.Code Cong. & Ad.News 1962, 1962–2029. Consistent treatment and certain deterrence are advanced when TILA claims are accorded equal deference in all jurisdictions. Thus, the need for uniformity which underlies the result in *Dice* also demands that we judge the release in this case according to federal law.[4]

The court below found that waiver was inconsistent with the public interest in enforcing TILA requirements. *Parker v. De-Kalb Chrysler Plymouth*, 459 F.Supp. 184, 186–87 (N.D.Ga.1978). To reach this result, it relied on *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945), and *Buford v. American Finance Co.*, 333 F.Supp. 1243 (N.D.Ga.1971). *Brooklyn Savings* sets forth a general principle that was applied to TILA claims in *Buford*.

*Brooklyn Savings* involved the validity of a release given by an employee to his employer surrendering the employee's rights to overtime compensation under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207. The Court declared the release void, reasoning that: "Where a private right is granted in the public interest to effectuate a legislative policy, waiver of a right so charged or colored with the public interest will not be allowed where it would thwart the legislative policy which it was designed to effectuate." 324 U.S. at 704, 65 S.Ct. at 901.[5] Since no legislative history spoke directly to the waiver question, the Court considered the purpose of the Act and the type of worker that it was designed to help.

The FLSA was passed to protect certain segments of the population from substandard wages and excessive work hours. An unequal bargaining position with their employer rendered these employees incapable of protecting themselves, and Congress deemed their plight in the aggregate injurious to national health and efficiency. The FLSA thus was conceived with a public and a private purpose: it established a set of individual rights that would create a healthier environment for all workers. The Court logically concluded that "the same policy which forbids employee waiver of the minimum statutory rate because of inequality of bargaining power, prohibits these same employees from bargaining with their employer in determining whether so little damage was suffered that waiver of liquidated damages is called for." *Id.* at 708, 65

---

3. Only two district courts have considered this issue. The district court in *Buford v. American Finance Co.*, 333 F.Supp. 1243, 1248 (N.D.Ga. 1971), held releases obtained after commencement of the lawsuit null and void. The district court in *Owens v. Magee Finance Service of Bogalusa, Inc.*, 476 F.Supp. 758, 769 (E.D.La. 1979), faced the question of whether a party could release TILA claims, but found instead that the settlement document lacked consideration.

4. *Cf. Croce v. Bromley Corp.*, 623 F.2d 1084, 1097 (5th Cir. 1980), *cert. denied*, 450 U.S. 981,

101 S.Ct. 1516, 67 L.Ed.2d 816 (1981), where the court found that the need for uniformity was missing when the claim is a statutory creature of the state.

5. *See also United States v. Barnette*, 546 F.2d 187, 189 (5th Cir.), *cert. denied*, 434 U.S. 822, 98 S.Ct. 65, 54 L.Ed.2d 79 (1977), (FLSA case); *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826, 857–58 (5th Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976) (an employer may not approach an employee directly to obtain a prospective waiver of his rights under Title VII).

S.Ct. at 902–03.[6] In *Brooklyn Savings*, then, both the powerlessness of the workers and the public interest in promoting fair labor practices convinced the Court that waiver would undermine the legislative policy behind FLSA.

■ The rationale of *Brooklyn Savings* persuades us that the general release should not bar Parker's TILA claim. The Truth in Lending Act has both a public and private purpose to justify its enforcement. Congress emphasized the dual function of the Act in its opening section:

The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various terms available to him and avoid the uninformed use of credit.

15 U.S.C. § 1601. The public benefits from enforcement of TILA because it creates a system of disclosure that improves the bargaining posture of all borrowers. To ensure the realization of this goal, Congress granted consumers a minimum recovery, plus costs and reasonable attorney's fees, without having to prove actual damages. 15 U.S.C. § 1640(a). This type of remedy provides a deterrent comparable to exemplary damages because it encourages individuals to bring TILA actions and discourages noncompliance. Strict technical compliance, regardless of actual injury, promotes the standardization of credit terms for the benefit of all borrowers, not just the individual claimant. *See Smith v. Chapman*, 614 F.2d 968, 971 (5th Cir. 1980); *Williams v. Public Finance Corp.*, 598 F.2d 349, 356 (5th Cir. 1979).

Not only does TILA contemplate a public interest in the enforcement of individual rights, but the public must rely largely on the efforts of individual consumers acting as "private attorneys general" to achieve the disclosure system envisioned by the Act. *McGowan v. King, Inc.*, 569 F.2d 845, 848 (5th Cir. 1978). If these private attorneys general are permitted to waive TILA claims in circumstances such as those presented in this case, the public interest in deterring inconsistent and undecipherable lending practices would be greatly hampered. The significance of this possibility becomes clearer when we consider that the confusion, and perhaps ignorance, that has led consumers in the past to accept draconian credit terms leaves them equally vulnerable when the lender gives them a general release of prospective claims to sign. The Truth in Lending Act was necessary exactly because borrowers could not force creditors to provide voluntarily a system of credit within which consumers could function intelligently. H.R.1040, 90th Cong., 2d Sess. (1968), *reprinted in* [1968] U.S.Code Cong. & Ad.News 1962, 1965–70.

Appellant tries to distinguish *Brooklyn Savings* and its rationale by citing language in that opinion explicitly reserving for decision the validity of releases that are given when there is a "bona fide dispute between the two parties." 324 U.S. at 714, 65 S.Ct. at 905. The bona fide dispute in this case, according to appellant, is over the parties' intent when they signed the release. This characterization misconstrues the central issue in the case—whether the release is valid against prospective TILA claims. The intent of the parties to the release does not even become relevant until a court decides that the release could encompass TILA claims in the first instance.[7]

---

**6.** *See also Barrentine v. Arkansas-Best Freight System*, 450 U.S. 728, 101 S.Ct. 1437, 1445–47, 67 L.Ed.2d 641 (1981), where the Court relies on the policies explained in *Brooklyn Savings* to hold that an employee's claim under FLSA is not barred by the prior submission of the employee's grievances to arbitration.

**7.** We similarly reject appellant's efforts to distinguish the nature of relief sought in this case from that granted in *Brooklyn Savings*. We can see no significant distinction between the damages in either case. Both amounts are liquidated sums defined by statute, and both plaintiffs become entitled to the sums upon

We hold that Parker's release does not bar her TILA claim because we are convinced that she was unaware that the release encompassed her TILA rights. Parker's uncontroverted affidavit states that DeKalb never mentioned TILA when it gave her the release. Although DeKalb disputes the type of representations made to Parker concerning the repair of her Cordoba, it does not deny the absence of any disclosures about TILA. More importantly, the release itself does not contain any reference to prospective TILA claims, and the policies underlying TILA, as we have explained, do not permit us to read her TILA rights into the boiler plate language of "any and all claims." While a consumer may have good reason to believe that "all claims" in the release applies to mechanical problems afflicting a new car, they may be unfairly deceived if we allow such broad language to bar their claims under an Act of which they may be unaware and which was passed for the protection of all borrowers, both gullible and sophisticated. *See Smith v. Chapman, supra*, 614 F.2d at 971.

For the foregoing reasons, we affirm the judgment of the district court. We disagree with its reasoning, however, insofar as it adopts the absolute rule of *Buford, supra*, which holds all attempted releases of TILA claims null and void. We simply find that a release given under the circumstances in this case does not bar a claim under the Truth in Lending Act.

AFFIRMED.

---

proof of a statutory violation. *See* 15 U.S.C. § 1640(a). The fact that one sum is based on earned wages and the other sum is based on finance charges does not alter the basic similarity in their underlying policies.