DYK, Circuit Judge,
with whom NEWMAN, Circuit Judge, joins, dissenting.
I respectfully dissent because, in my view, the Office of Personnel Management’s (“OPM’s”) SF 2801-2 spousal consent form fails to provide the required statutory notice to the spouse of her right to receive a survivor annuity.
I
Survivor annuities have long been a feature of federal retirement plans. Before 1984, the civil service employee alone decided whether his spouse would receive a survivor annuity. See 5 U.S.C. § 8341(b)(1) (1982). The Civil Service Retirement Spouse Equity Act of 1984, Pub.L. No. 98-615, 98 Stat. 3195, was designed to remedy this situation in three ways: (1) it recognized the existing right *1322 to a survivor annuity; (2) it provided the spouse with a right to receive the annuity even if the employee waived the annuity; and (3) it required notice to the spouse (as well as the employee) of the statutory annuity right, and required the spouse to affirmatively waive the right to receive it. The Act provides that
if an employee ... dies after having retired under this subchapter and is survived by a widow or widower, the widow or widower is entitled to an annuity equal to 55 percent [of the employee’s annuity] ... unless the right to a survivor annuity was waived under ... section 8339(j)(l)....
Id. § 2(4)(B)(i), 98 Stat. at 3199 (codified at 5 U.S.C. § 8341(b)(1)) (emphases added). Section 8339(j)(1) specifies that in order to waive the survivor annuity, “the employee ... and the spouse [must] jointly waive the spouse’s right to a survivor annuity in a written election filed with [OPM] at the time that the employee ... retires.” 5 U.S.C. § 8339(j)(1) (emphases added).
In passing the Act, Congress wanted to make certain that spouses knew of their statutory right to an annuity, and the consequences of an election. The legislative history of the Act evinces Congress’s clear desire to “strengthen the election process” to ensure that both civil service employee and spouse “know precisely what will be gained or lost as a result of the election.” H.R.Rep. No. 98-1054, at 12 (1984), as reprinted in 1984 U.S.C.C.A.N. 5540, 5543 (emphasis added). Representative Patricia Schroeder, the original sponsor of the Act, stated:
Section 4 of H.R. 2300 would make survivor benefits mandatory unless the retiree, spouse, or former spouse ... sign[s] a notarized waiver electing out of the survivorship plan. This “informed consent ” procedure is urgently needed because many retirees are not fully aivare of the consequences of their irrevocable decision at the time of retirement. When they later discover that they may have made a mistake, it is too late to correct it. Every week I receive frantic letters from widows of civil service employees who discovered after the death of the retiree that they have no survivor benefits and are facing economic devastation.
Civil Service Spouse Retirement Equity Act: Hearing on H.R. 2300 Before the Subcomm. on Compensation and Employee Benefits of the H. Comm, on Post Office and Civil Service, 98th Cong. 5 (1983) (emphases added). Congress thus intended that spouses be provided adequate notice in order to understand their statutory rights prior to executing knowing and intentional waivers.
In other contexts, courts have recognized the importance of adequate notice for a waiver of statutory rights. See, e.g., Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974) (“In determining the effectiveness of any such waiver [of a cause of action under Title VII of the Civil Rights Act of 1964], a court would have to determine at the outset that the employee’s consent to the settlement was voluntary and knowing.”); Tierney v. Schweiker, 718 F.2d 449, 455-56 (D.C.Cir.1983) (holding notice-and-consent forms for the release of confidential tax information by the IRS to the Social Security Administration invalid, in part for failure to set forth the individuals’ rights, because “[without an understanding of their substantive and procedural rights, appellants cannot be said to have consented knowingly and voluntarily to the release of their tax information”); Parker v. DeKalb Chrysler Plymouth, 673 F.2d 1178, 1182 (11th Cir.1982) (holding that purchaser’s release of automobile dealer “from any and all claims” did not bar Truth in Lending Act claim where purchaser was not made aware that the release encompassed those rights).
*1323 We have been stringent as well in enforcing adequate notice requirements in the closely related area of survivor benefits following divorce. See, e.g., Hernandez v. Office of Pers. Mgmt., 450 F.3d 1332, 1335 (Fed.Cir.2006) (holding that OPM failed to provide adequate notice that a civil service retiree must make an election in order to continue providing spousal survivor benefits following divorce); Wood v. Office of Pers. Mgmt., 241 F.3d 1364, 1366-67 (Fed.Cir.2001) (same); Vallee v. Office of Pers. Mgmt., 58 F.3d 613, 615-16 (Fed.Cir.1995) (same).
II
In my view, the SF 2801-2 spousal waiver form at issue in this case, denominated “Revised January 1990,” did not come close to adequately informing spouses of retiring civil service employees of their statutory right to an annuity. A copy of the form Mrs. Braza signed is attached.[1] As can be seen, the form is divided into three parts requiring completion: Part 1 of the form is reserved for the retiring employee to indicate his survivor annuity election. Part 2 of the form consists simply of a line on which the retiring employee’s spouse signs, beneath the following statement: “I freely consent to the surviv- or annuity election described in Part 1. I understand that my consent is final (not revocable).” Part 3 of the form is a standard notary signature block. The “Attachment to SF 2801-2,” dealing with survivor health coverage, also attached, states:
I have freely consented to the survivor annuity election described on the attached SF 2801-2, Spouse’s Consent to Survivor Election. I understand that I will be ineligible to continue coverage under the Federal Employees Health Benefits (FEHB) Program if my spouse dies because I have consented to his/her election to provide no survivor annuity.
While the SF 2801-2 form states that by signing Part 2 a spouse consents to the election made by the employee in Part 1; that the consent is irrevocable; and that the spouse will receive a reduced survivor annuity or no annuity, nothing on the form adequately provides that, if the spouse does not sign, she will have a statutory right to receive her own annuity for her life if the employee-spouse predeceases her. The only notice given the spouse in the SF 2801-2 of the statutory right is one sentence at the bottom of the form, beneath the notary signature block, that states:
General Information: Public Law 98-615 requires that a retiring, married employee whose annuity begins on or after May 7, 1985, must elect to provide a full survivor annuity for a current spouse, unless the current spouse consents to some other election by signing this form.
This sentence is part of a block of small-print text that describes among other things the rights of a divorced spouse and the usual boilerplate privacy rights.
Ironically, SF 2801, the separate form completed only by the employee, does describe the spouse’s statutory right to a survivor annuity (“the law provides an annuity with full survivor benefits for your spouse unless your spouse consents to your election”), and explains that that right will be lost if the employee elects a *1324 self-only annuity and his spouse consents to that election. However, there is no requirement or suggestion on any of the forms that the consenting spouse read the form signed by the employee.
The majority, relying entirely on the “General Information” sentence at the bottom of the form, contends that the SF 2801-2 form “clearly states that the law requires an employee to provide a full survivor annuity for a current spouse.” Majority Op. at 7. The form, however, is in fact far from clear. First and foremost, the text on the form is not likely to be understood by non-lawyers since it is written in legalese. It refers to “Public Law 98-615” instead of a “statutory right.” The form further speaks to a compelled election by the employee, not the right of the spouse to receive the annuity, absent waiver. The difference in language masks the importance of the spouse’s right and dramatically affects how the spouse may view the survivor annuity; it suggests that by not signing the form, the spouse is compelling a disadvantageous election by her husband rather than claiming a benefit to which she is statutorily entitled.
Second, even if the notice could be understood, the notice is buried so that it is not likely to be read. The language appears labeled “General Information” at the bottom of the form, below the notary signature block, and the spouse is not invited to read it before signing, much less directed to read it before signing. As noted above, the text is also accompanied by various other provisions such as the rights of a divorced spouse and the usual boilerplate privacy rights. The language appears in small type.
Thus, even with adequate time to review the form, it is unlikely to be informative. And it is equally unlikely that spouses are typically given time to review the form at their leisure. The problem is well illustrated by the facts of this case, where Mrs. Braza’s husband allowed her only a brief period of time to review the form before signing it. The government does not suggest that this is atypical. Indeed, the government cites a recent nonprecedential opinion of this court involving similar circumstances. See Scalese v. Office of Pers. Mgmt., 283 Fed.Appx. 800, 803 (Fed.Cir.2008). Particularly in this context and given the deficiencies in the form, it is simply unrealistic to expect those signing the form to read or understand the information essential to an effective waiver of their statutory right. Prominent and clear information is all the more essential given the real world context in which the forms are executed.
If this waiver appeared in a form used in the private sector, it would never be held to satisfy the notice requirements, under cases such as Alexander and Parker, cited earlier. The government must be governed by the same rules that it imposes on others. Because the SF 2801-2 spousal waiver form fails to provide adequate notice of the statutory right to a survivor annuity absent the waiver, it fails to comply with the statute.[2] I respectfully dissent.
*1325 [[Image here]]
*1326 [[Image here]]

. To maintain privacy, the social security number on the form has been redacted. OPM revised its SF 2801-2 form in 2007. See U.S. Office of Pers. Mgmt., Standard Form 2801, Application for Immediate Retirement, at 16 (2007), available at http://www.opm.gov/ forms/pd£_fil]/SF2801.pdf. The old form almost certainly still affects hundreds of thousands of former federal employees.

. I agree with the majority that if the form were compliant, signing of the form would automatically constitute a waiver absent a showing of fraud, duress, or mental incompetence. Collins v. Office of Pers. Mgmt., 45 F.3d 1569, 1573 (Fed.Cir.1995). The reverse is not true, i.e., a waiver may occur if the spouse, despite a noncompliant form, was aware of the statutory right and the consequences of signing. But here, the Administrative Judge found that Mrs. Braza did not have such knowledge, and therefore no waiver occurred.