[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13965
Non-Argument Calendar
_____

D.C. Docket No. 4:16-cv-00801-RH-CAS

MARIA RODRIGUEZ,
NUBIA WILKINSON,
QIANA NORMAN,
FAYE FLANAGAN,
ALISHA GRIMMAGE, et al.,

Plaintiffs-Appellees,

versus

MOLINA HEALTHCARE INC.,

Defendant,

MOLINA HEALTHCARE OF FLORIDA
INC.,

Defendant-Appellant.

_____

No. 19-13968
Non-Argument Calendar
_____

D.C. Docket No. 4:18-cv-00194-RH-CAS

CAROLYN DYER,

Plaintiff-Appellee,

versus

MOLINA HEALTHCARE, INC.,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Florida
_____

(March 26, 2020)

Before JORDAN, LAGOA and BLACK, Circuit Judges.

PER CURIAM:

These consolidated appeals concern an award of attorney's fees in a pair of

Fair Labor Standards Act (FLSA) cases.  The plaintiffs in both cases asserted

claims under the FLSA for unpaid overtime against Molina Healthcare of Florida,

Inc. (Molina).  The first case was a class action, initiated in 2016 by class

representatives Maria Rodriguez and Nubia Wilkinson (Plaintiffs).[1]  The second

---

[1] "An action to recover" under the FLSA "may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  However, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party."  *Id.*

2

case was brought by Carolyn Dyer, who attempted to opt in to the class litigation after the applicable deadline.  Because Molina opposed Dyer's motion to permit late opt in, the district court denied permission to opt in, and Dyer filed her own individual complaint against Molina.  The district court entered a single order addressing attorney's fees in both cases, and this Court has consolidated the appeals of both cases.

The parties settled on terms allowing an award of attorney's fees, expenses, and costs as determined by the district court.  After considering the parties' arguments, the district court entered an order awarding attorney's fees, attendant expenses, and taxable costs in the amount of $488,875.13.

On appeal, Molina challenges the district court's fee calculation on three primary bases: (1) the reported hours expended by Plaintiffs' counsel were unreasonable; (2) the district court should have applied a more significant downward adjustment of the lodestar; and (3) the fee award should not have included hours expended on the separate individual case brought by Dyer.  After review, we affirm the district court's fee award.

## I. BACKGROUND

Before addressing the substance of Molina's arguments, we briefly describe the factual background to give context for this appeal.

*A. Plaintiffs' Complaint and Molina's Answer*

3

In December 2016, the named representative plaintiffs, Rodriguez and Wilkinson, filed their complaint in the District Court for the Northern District of Florida against Molina and its corporate parent, Molina Healthcare, Inc. (MHI). The complaint alleged Plaintiffs, and those similarly situated, had been unlawfully classified as exempt from the FLSA's overtime provisions.

On March 3, 2017, Molina responded to the complaint with a motion to dismiss and transfer venue to the Northern District of Illinois, arguing a first-filed class action pending in that court raised identical claims. In response, Plaintiffs dismissed MHI—the only defendant in the pending Illinois litigation—from the case and filed an amended complaint. In light of the dismissal of MHI, the district court denied Molina's motion to dismiss on May 24, 2017.

On July 6, 2017, following the denial of its motion to dismiss, Molina filed its answer and affirmative defenses. At that time, Molina denied liability, maintaining it had properly exempted Plaintiffs from overtime pay under the FLSA.

*B. Discovery*

During the pendency of Plaintiffs' original complaint, the district court entered an Initial Scheduling Order directing the parties to hold a conference under Federal Rule of Civil Procedure 26(f) and to submit a joint discovery plan. Before the parties were able to conduct a Rule 26(f) conference, however, Plaintiffs served

several discovery requests on Molina, including requests for admissions, requests for production of documents, and interrogatories.  In response to these requests, Molina asked the district court for a protective order barring Plaintiffs' discovery requests as premature and inconsistent with the court's scheduling order.  Plaintiffs eventually abandoned these initial discovery requests, though they subsequently issued a new set of requests—both collective and on behalf of each individual named and opt-in plaintiff—on June 26, 2017.  According to Molina, Plaintiffs served additional discovery requests on behalf of each individual plaintiff who subsequently opted in.

On the same day it denied Molina's motion to dismiss, the district court ordered the parties to conduct a Rule 26(f) conference and file a report by July 6, 2017.  It subsequently set a telephonic pretrial conference for July 10, 2017.

As noted above, Molina filed its response to Plaintiffs' amended complaint on July 6. That same day, the parties filed their Rule 26(f) report, in which Molina "maintain[ed] that plaintiffs and members of the putative collective were at all times properly classified and paid in accordance with the FLSA."  However, Molina noted that it had, in 2016, "voluntarily reclassified plaintiffs and members of the putative collective to non-exempt/overtime-eligible status and has since paid them overtime accordingly."  Molina further noted it was "negotiating a series of settlements nationwide, under the auspices of the U.S. Department of Labor (DOL)

and the U.S. District Court for the Northern District of Illinois, designed to resolve claims identical to those asserted by plaintiffs and the putative class."

In light of these developments, Molina proposed that all discovery be stayed and the parties be directed to mediate. Plaintiffs opposed this proposal, insisting mediation would only be appropriate after substantial discovery. Molina subsequently filed a letter formally asking the district court to stay all discovery. Molina recounted its ongoing effort to settle similar claims and argued that much of the discovery Plaintiffs had to that point requested was "irrelevant given Molina's position."

Following the July 10 telephonic conference, the district court entered a Scheduling and Mediation Order, which stated that Molina had "admitted on the record . . . that the plaintiffs were not exempt from the [FLSA] requirement to pay overtime for overtime hours worked during the two- and three-year period at issue." However, because Molina did not admit that its violation of the FLSA was willful, the case was to move forward with discovery. The district court did not specifically respond to Molina's motion to stay discovery, but it set a discovery period and ordered that the parties mediate within 14 days after the discovery

deadline. The district court eventually set the discovery deadline (via an amended scheduling order) for July 9, 2018.[2]

In response to Plaintiffs' continuing discovery requests on behalf of each new plaintiff who opted in to the case, Molina filed another motion for a protective order on October 24, 2017, again citing the DOL settlement and the Illinois litigation as providing a framework for settlement. Plaintiffs opposed the motion and moved the district court to compel Molina to comply with outstanding discovery requests. After a hearing, the district court entered an order limiting discovery on November 17, 2017. By that time, Plaintiffs had withdrawn their pending interrogatories, production requests, and admission requests.

The district court therefore denied Molina's motion for a protective order and Plaintiffs' motion to compel discovery as moot. It also denied Molina's motion to stay discovery but limited Plaintiffs to 30 interrogatories on issues applicable to all plaintiffs, up to 3 plaintiff-specific interrogatories for each class

---

[2] The discovery deadline was originally set at 180 days after the deadline for new plaintiffs to opt in to the case. Once the parties agreed on the form and manner of notice to be sent to prospective class members, the district court entered an order approving the form of notice and setting the deadline for providing notice to class members as September 18, 2017. The court had previously set the opt-in deadline at 60-days after the date the notices were sent. As noted above, Appellee Dyer sought to intervene after that opt-in deadline. Although Plaintiffs' counsel received Dyer's opt-in consent form on December 6, 2017, the motion to allow her to opt in was not filed until February 15, 2018. Her request to opt in late was denied after Molina opposed the motion. She subsequently filed an individual complaint against Molina, which led to additional discovery requests. The discovery deadline in that case was September 6, 2018.

member, and production requests from up to 5 custodians of up to 20 categories of documents.  Plaintiffs then issued a third set of discovery requests in line with the district court's limitations.

Molina also issued its own set of discovery requests, including requests for production and interrogatories seeking information from Plaintiffs and from each individual class member.  As part of those interrogatories, the individual class members were asked to report the number of total hours they worked during the relevant time period.  As discovery continued, however—and particularly as the individual plaintiffs selected for trial were deposed—certain interrogatory answers concerning hours worked proved to be untruthful.

*D. Settlement*

In its November 2017 order, the district court also instructed Plaintiffs to serve damages disclosures under Federal Rule of Civil Procedure 26(a).  Plaintiffs initially claimed a total of approximately $11.5 million based on overtime hours worked by the 68 employees who were parties to the action.  Plaintiffs subsequently filed amended disclosures claiming a total of over $12 million.

The parties attempted to mediate and reach a settlement at least two times before eventually settling on the eve of trial.  The first attempted mediation— which concerned only the claims in the primary class action—occurred on May 22, 2018, but that attempt ended in an impasse.  The parties attempted mediation a

second time on September 18, 2018, this time attempting to resolve the claims in both the class action and Dyer's individual action. This attempt too ended in an impasse.

The district court eventually set a trial date of December 5, 2018. On November 29, 2018, six days before the trial and following several months of pretrial litigation, the parties filed a Notice of Settlement. The Settlement Agreement provided for a total settlement payment of $400,000, including payments to the named plaintiffs, opt-in plaintiffs, and Dyer for their overtime claims. In general, the amount paid to each individual plaintiff was much lower than the estimated damages for each plaintiff as reflected in the Rule 26(a) disclosures.

Plaintiffs subsequently filed their motion for attorney's fees, requesting a total of $510,922.00 in fees, plus $11,086.42 in costs. In support of that filing, Plaintiffs submitted declarations and logs establishing the hours worked and the reasonable hourly rates. Molina responded to the motion— raising several of the same arguments regarding the fee calculation it now makes on appeal— challenging the reasonableness of the claimed hours and the overall fee. The district court rejected the majority of Molina's arguments, though it did impose a modest reduction in the number of hours expended by Plaintiffs' counsel. The

district court ultimately ordered Molina to pay a total fee amount of $488,875.13, including expenses and costs, which it found to be a reasonable overall fee.

## II.  DISCUSSION

On appeal, Molina does not dispute that Plaintiffs were entitled to attorney's fees, nor does it take issue with the hourly rate the district court used to calculate the lodestar.  Rather, as noted above, Molina challenges the district court's fee calculation on three bases, challenging (1) the reasonableness of the reported hours expended by plaintiffs' counsel; (2) the appropriate adjustment of the lodestar; and (3) the inclusion of hours expended on the Dyer case.

We review a district court's award of attorney's fees for abuse of discretion, reviewing underlying questions of law *de novo* and findings of fact for clear error. *Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation*, 442 F.3d 1283, 1287 (11th Cir. 2006).  Under this standard, the district court enjoys "a range of choice . . . , so long as that choice does not constitute a clear error of judgment." *United States v. Kelly*, 888 F.2d 732, 745 (11th Cir. 1989).  To constitute an abuse of discretion, the district court must have "fail[ed] to apply the proper legal standard or to follow proper procedures in making the determination or base[d] an award . . . upon findings of fact that are clearly erroneous." *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1322 (11th Cir. 2004).  However, the district court

10

must "articulate its rulings in sufficient detail to enable us to accomplish a meaningful review." *Adams v. Mathis*, 752 F.2d 553, 554 (11th Cir. 1985).

Here, the district court's well-reasoned opinion sufficiently explained its decision and addressed Molina's salient arguments. For the reasons explained below, we do not find that the district court abused its considerable discretion in calculating the proper fee award under the lodestar.

*A. Hours Reasonably Expended in Litigation*

When a plaintiff prevails in a FLSA action, the district court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The first step in calculating a reasonable attorney's fee award is to determine the "lodestar"—the product of multiplying reasonable hours expended times a reasonable hourly rate. *Am. Civil Liberties Union of Ga. v. Barnes*, 168 F.3d 423, 427 (11th Cir. 1999). The district court here found that (1) Plaintiffs' attorneys worked the hours they claimed; (2) the claimed hourly rates were within the range customarily charged in the district; and (3) the claimed expenses would ordinarily be passed on to the client as part of the billing for attorney's fees.

However, Molina argued the number of hours reported by Plaintiffs' attorneys were wholly unreasonable, and it maintains on appeal the district court abused its discretion in calculating the lodestar based on those reported hours.

11

Molina points to counsel's failure to participate in early mediation, the repeated rafts of what Molina characterizes as unnecessary discovery, and unnecessary billing, which Molina attributes to "duplicative efforts in various phases of the litigation."

The district court considered and rejected these same arguments below, and we find it acted well within its discretion in doing so.  *See Kelly*, 888 F.2d at 745. As to Plaintiffs' supposed refusal to mediate, Molina takes issue with Plaintiffs' resistance to Molina's efforts to consolidate the instant litigation with a similar class action pending in the Northern District of Illinois.  The district court noted that Plaintiffs' counsel had achieved better results than those in the Illinois litigation, finding the Illinois litigation resulted in a recovery of just under 25% as much per employee.  The district court declined to penalize Plaintiffs' counsel for "work[ing] harder and obtain[ing] for their clients a multiple of the amount recovered in Illinois."

Molina dismisses the district court's reasoning as "perfunctory" and insists the benefit to Plaintiffs and the class members of separately litigating their claims was marginal.  But we find the district court's explanation sufficient, and we cannot say that its rejection of Molina's argument constitutes a clear error in judgment.  *See Kelly*, 888 F.2d at 745.  Plaintiffs certainly could have opted to consolidate their claims with those in the related Illinois litigation, but they were

12

under no obligation to do so, and we, like the district court, see no reason to penalize counsel for choosing to litigate their clients' claims separately.

The district court also rejected Molina's assertion that Plaintiffs' discovery requests were unnecessary and unreasonable, an assertion fundamentally premised on Molina's contention that there was never any dispute as to liability. Because Molina conceded liability, it argues, Plaintiffs' discovery requests concerning, for example, Molina's alleged misclassification of the class members was unjustified as was any time spent preparing those requests. In rejecting this argument, the district court noted that, while Molina did indeed admit liability, it did not admit willfulness, so the merits of its decision not to pay overtime remained an issue in the litigation. The district court acknowledged that Plaintiffs had withdrawn certain discovery requests and may have pursued some lines of inquiry that were not, at the end of the day, relevant. But, on the whole, the district court found counsel's conduct to be "reasonable, well-intentioned, and successful." We find the district court's explanation sensible.

Molina's characterization of the nature of the dispute in the district court (i.e., that the only issue was the number of overtime hours worked) is an oversimplification. For one, it simply is not the case that there was *never* any dispute as to liability. Molina maintained, in both its answer and the subsequent Rule 26(f) report, that Plaintiffs and all members of the putative class were at all

13

relevant times properly classified.  It was not until the July 2017 teleconference that Molina formally conceded liability, and, notably, a not insignificant portion of the three rounds of discovery requests Molina now points to as unnecessary were issued prior to that formal concession.  Moreover, as the district court recognized, Molina did not admit willfulness, an issue that could have affected the ultimate damages award.  *See* 29 U.S.C. § 255(a) (providing for an extended three-year limitations period where a cause of action arises out of a willful violation); 29 U.S.C. § 260 (permitting a court to "award no liquidated damages" where an employer shows it "had reasonable grounds for believing that [its] act or omission was not a violation of the [FLSA]").

With regard to counsel's "unnecessary billing," Molina points to the presence of multiple attorneys at depositions and to general "duplicative efforts in various phases of the litigation."  The district court was not persuaded that the presence of multiple attorneys at depositions merited an adjustment in the number of reasonable hours expended.  After noting Molina itself was represented by three attorneys of record, the district court explained that it was entirely rational to assign more than a single attorney to a substantial case such as this one.  Even so, the district court, after carefully reviewing the time records submitted by Plaintiffs' counsel, concluded an adjustment for duplication was in order.  Accordingly, the

district court's order made a 50-hour adjustment for one specific attorney and a 2% across-the-board adjustment for all timekeepers.

Molina asks us to find the district court's adjustment insufficient, but we decline to substitute our judgment for that of the district court judge in the absence of some clear indication in the record that there was unnecessarily duplicative billing beyond that already accounted for in the lodestar calculation. The mere fact that multiple attorneys were assigned to the case or attended depositions does not, on its own, make counsel's claimed hours unreasonable. While we have in the past recognized "the possibility of unnecessary duplication," "[a]n award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case." *Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983).

Notably, Molina has not identified—either in its briefing here or before the district court—the particular hours it believed were duplicative or should have been disallowed beyond asserting that multiple attorneys were present at depositions. Instead, Molina simply asserts that "counsels' billing records evidence multiple instances of duplicative efforts" and generally points to time billed for "screening class members, preparing notices of opt-ins, and drafting disclosures and written discovery responses." Molina, as the party opposing the fee application, had an obligation to identify the hours that should be excluded

15

with some degree of specificity. *See Barnes*, 168 F.3d at 428 ("Those opposing fee applications have obligations, too. In order for courts to carry out their duties in this area, 'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise.'" (quoting *Norman v. Housing Auth. of Montgomery*, 836 F.2d 1292, 1301 (11th Cir. 1988))); *see also Norman*, 836 F.2d at 1301 ("Generalized statements that the time spent was reasonable or unreasonable of course are not particularly helpful and not entitled to much weight."). For example, we have reversed a district court's fee award where defendants, in opposition to the plaintiffs' fee application, filed "a chart with color-coded categorization of the requesting attorneys' time sheets detailing what the defendants alleged were excessive, unreasonable, and duplicative hours included in the application." *Barnes*, 168 F.3d at 426–27.

Having concluded the district court's lodestar calculation was proper, we now address Molina's claim the district court abused its discretion in declining to further adjust the lodestar to reflect a reasonable overall fee.

*B. Downward Adjustment of the Lodestar*

A lodestar figure "is itself strongly presumed to be reasonable." *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1150 (11th Cir. 1993); *see Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010) ("[W]e have said that the [lodestar reasonableness] presumption is a strong one." (quotation marks

omitted)).  Nonetheless, once the lodestar has been calculated, it may then be adjusted after considering other factors, such as the results obtained.  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  Relevant here, when "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."  *Id.* at 436.

Molina insists the district court abused its discretion in declining to further reduce the lodestar because, it contends, Plaintiffs' claims were based on frivolous demands (as reflected in Plaintiffs' Rule 26(a) disclosures and the sworn responses to Molina's interrogatories), Plaintiffs ultimately settled for an amount far below their initial demand, and the case was not complex and resulted in a nominal settlement amount.

Here too, we find the district court acted within the bounds of its discretionary authority in declining to further adjust the lodestar.  Molina first argues Plaintiffs' initial damages estimates were grossly inflated and, indeed, fabricated.  The district court acknowledged that certain class members apparently made excessive claims under oath, but concluded any allegedly fraudulent statements would only justify a reduction of the fee award if there was evidence the attorneys knew or should have known of the error.  To the extent there was information available from which Plaintiffs' counsel could have learned that the

17

various class members' estimated damages were overstated, the district court noted that Molina's delay in providing discovery concerning the number of hours worked by individual class members may have contributed to the problem. In any case, the district court found the effect of the inflated damages claims on the hours expended to be minimal.

Molina criticizes the district court's decision not to attribute fraudulent intent to Plaintiffs' counsel, arguing the idea that Plaintiffs' counsel (who drafted the Rule 26(a) disclosures interrogatory responses) was unaware of the fraudulent nature of the responses "strains credulity." Molina overstates the degree to which the record compels the conclusion that Plaintiffs' counsel knowingly put forward fabricated damages estimates. True, the attorneys drafted the disclosures and interrogatory responses, but they apparently did so based on information obtained from their clients and in the absence of fulsome records. Thus, we cannot say the district court's finding that Plaintiffs' counsel did not knowingly provide inflated or fraudulent damages estimates is clearly erroneous. *See Atlanta Journal & Constitution*, 442 F.3d at 1287; *Mut. Serv. Ins. Co.*, 358 F.3d at 1322.

Molina also argues Plaintiffs' inflated damages claims and their subsequent refusal to reduce their demands unnecessarily contributed to the continued expenditure of fees by both sides. The district court declined to fault Plaintiffs for not agreeing to accept $400,000 until shortly before trial, reasoning the record does

18

not support Molina's suggestion Plaintiffs could have necessarily obtained the same result earlier or with less effort. Again, we do not find the record compels a contrary conclusion—i.e., that Plaintiffs in bad faith rejected substantially similar offers with the intent of unnecessarily prolonging litigation.

As for the complexity of the case and the degree of Plaintiffs' "success," the district court disagreed with Molina's contention that the award in this case was "nominal," finding that, in fact, the recovery for these plaintiffs was "substantial." The district court further noted that the Plaintiffs' success should not be measured solely by the size of their recovery. Rather, the district court considered it important and beneficial to the public that the FLSA was successfully enforced:

> [E]ach time the FLSA is enforced, it provides an incentive for employers to obey rather than flout the statute. This was not monumental litigation, and the case was settled, producing no precedential impact. But [Molina's] effort to denigrate the willingness of these plaintiffs—and these attorneys—to pursue the litigation does not withstand analysis.

We find this assessment of the Plaintiffs' relative success to be well-reasoned. While it is obviously true that Plaintiffs in the end agreed to a damages award far below the initial multi-million-dollar estimate, it is not entirely fair to limit the assessment of Plaintiffs' success to the size of the fee award. Plaintiffs were successful in all of their claims, and, as the district court noted, there is inherent value in enforcing the FLSA. *See Parker v. DeKalb Chrysler Plymouth*, 673 F.2d 1178, 1180 (11th Cir. 1982) ("The FLSA . . . was conceived with a public

19

and a private purpose: it established a set of individual rights that would create a healthier environment for all workers."); *see also Fegley v. Higgins*, 19 F.3d 1126, 1134–35 (6th Cir. 1994) ("Courts should not place an undue emphasis on the amount of the plaintiff's recovery [in an FLSA case] because an award of attorney fees here encourages the vindication of congressionally identified policies and rights." (quotation marks omitted)).

As for the relative complexity of the case, as we discussed above, Molina's contention that this case is and has always been a simple dispute about damages is an oversimplification.  Accordingly, we find no abuse of discretion in the district court's decision not to adjust the lodestar and defer to its finding that the overall fee here was reasonable.

### C.  *Fees Related to Dyer Case*

The final issue Molina identifies with the district court's fee award is its decision to include fees for time expended representing Appellee Dyer in her separate action against Molina.  For its part, the district court would have allowed Dyer to opt in were it not for Molina's opposition to the motion.  The court therefore declined to punish Plaintiffs' counsel for billing additional hours that were only necessary because of Molina's tactical decision to oppose Dyer's late opt-in.  The district court further noted it was Dyer, not Plaintiffs' counsel, who was responsible for her failure to meet the opt-in deadline.  In any case, Dyer was

never obligated to opt in to the original action and was free all along to bring her own case.

The district court did not abuse its discretion in allowing separate fees for the Dyer action. Molina would place the lion's share of the blame for the need to bring a separate action on Plaintiffs' counsel, pointing to counsel's apparent decision to wait until two months after receiving Dyer's opt-in consent form to file a motion to allow her to join the case. But we find the district court's contrary finding to be entirely reasonable. After all, Appellee Dyer was always free to bring her own case and to employ Plaintiffs' attorneys as counsel. We see no reason to overturn the district court's decision on this point and penalize Plaintiffs' counsel for representing Dyer in a separate action.

## III. CONCLUSION

For the reasons stated above, we affirm the district court's fee award in favor of Plaintiffs.

**AFFIRMED.**